THE CENTRAL RAILROAD *vs.* HARRIS.

[HALL, J., not presiding.]

1. Suit was brought by a widow for the homicide of her husband, and
the evidence for the plaintiff tended to show that the deceased was
crossing the railroad in front of defendant's engine, passing along
a public street,. and that the engine ran over him and killed him;
that no bell was rung as a signal of its moving across the street.
The defendant's testimony tended to show that the plaintiff's hus-
band was on board the train when it started, and attempted to
jump off of his own accord, in spite of an iron barrier over
which he leaped, and thus fell between two cars and was killed:
*Held*, that the defendant was entitled to have submitted to the jury
both the question whether the plaintiff's husband caused the in-
jury solely by his own negligence, and also whether, by the use
of ordinary care, he could have avoided the consequences to him-
self caused by the defendant's negligence. Under the evidence for
the defendant, if believed by the. jury, .the failure to ring the bell
could not have affected or contributed to the injury, and an entire

76   501
98    88
76   501
112   644
76   501
113   362
113   712
76   501
122    93
e122   94
76   501
t128   630

omission to notice this branch of the defence in the charge requires a new trial.

*a.*) The defence provided for in §2972 of the Code is not identical with that under §3034; and while the doctrine of contributory negligence applies to both sections, yet the particular act of negligence in proof must be such as contributes to the thing that caused the injury sued for.

(*b.*) Where the judge gives in charge substantially the law covering the case, if more specific instructions on any point are desired, they should be asked; but the law of the case must be given to the jury to the extent of covering the substantial issues made by the evidence, whether requested or not, or whether the attention of the court be called thereto or not; otherwise the verdict will be set aside.

2. No other error appears. No complaint of excessive damages is made, and therefore it is immaterial what measured them.

March 23, 1886.

Railroads. Damages. Negligence. Charge of Court. Before Judge CLARKE. City Court of Atlanta. September Term, 1885.

Lucinda Harris brought suit against the Central Railroad to recover damages for the killing of her husband. The testimony for the plaintiff tended to show that the husband was in the depot in the city of Atlanta; that he walked alongside the train to go beyond the engine, which projected from the depot into a street-crossing at its end; that he undertook to cross the track at the street-crossing, when the train started rapidly without giving any signal, and ran over him.

There was some testimony tending to render it somewhat uncertain whether her husband was injured by the engine of the defendant or that of some other company, whose train started about the same time as that of the defendant; and also to the effect that the defendant's train started slowly and with the usual signals.

There was also evidence on behalf of the defendant tending to show that there was an excursion of colored people leaving on that train; that the husband of the

plaintiff went on the train to see them off, and after it started, attempted to leave the train from a platform without steps, and which had an iron railing around it; and that he seemed to trip and fall between the cars.

There was other testimony which need not be set out in detail.

The jury returned a verdict for the plaintiff for one thousand dollars. The defendant moved for a new trial upon the following grounds:

(1.) Because, under the facts in evidence, the court erred in charging as follows: "Railroad companies are required by statute to signal the approach of their trains to crossings and streets in a city by tolling the locomotive bell. Ordinary diligence would include such tolling of the bell when approaching a street in a city," without calling the attention of the jury to the elements of gross negligence on the part of the deceased, such as being upon the railroad track of the defendant in front of the moving train, and boarding a train in the depot without having purchased a ticket, and in jumping from said train when it was in motion, especially from a platform having no steps leading therefrom.

(2.) Because the court failed entirely to put before the jury the main defence relied upon by the defendant, and to sustain which abundant evidence had been introduced, to-wit, that defendant had boarded the passenger train in the depot without having purchased a ticket, and without having any intention of leaving the city thereon, but simply to say good-bye to a crowd of colored servants on their way to Florida, and that he had attempted to jump from said train when in motion, and from a platform having no steps attached thereto by which to descend to the ground, and having a railing extending around the entire platform to prevent persons from getting on and off the car to which it was attached, at that end. The charge of the court failed to call the attention of the jury in any way to these facts, but singled out the one element of neg-

ligence, arising from the failure, if such failure existed, to toll the bell on crossing Pryor street.

(3.) Because the charge, taken as a whole, presents only the plaintiff's case, and does not cover, or submit to the jury for their consideration, the facts relied upon by the defendant to sustain the defence.

(4.) Because the court failed to instruct the jury that, whilst the omission to signal the approach of the train to the crossing was negligence, yet it was not such negligence as would charge the defendant with a liability for damages, if they believed the deceased was on the train at the time it moved from the depot, and was killed by attempting to jump therefrom in the manner above stated when the said train was in motion. The attention of the jury should have been called to the above distinction, especially after the positive charge that " Ordinary diligence would include such tolling of the bell when approaching a street in a city."

(5.) Because the court failed to charge the jury that, if the deceased saw the train in motion in front of him, and attempted by rapid movements to pass ahead of what is known as the " cow-catcher," and was caught thereby and killed, then the omission to toll the bell was not such negligence as would charge the defendant with a liability in this case.

(6.) Because the court erred in charging the jury as follows : " Certain life tables have been introduced to throw light upon the question of how long Harris would have lived," when only one life table was introduced, to-wit, Carlisle Mortality Table, thus calling the attention of the jury to the Northhampton and the Actuary Mortality Tables, neither of which were introduced in evidence. [See note to next ground.]

(7.) Because the court erred in charging the jury as follows : " Certain life tables have been introduced to throw light upon the question of how long Harris would have lived. These tables are not, however, to be treated

by you as conclusive on this subject. They are to be used by you like other evidence, and in connection with other evidence, to aid you in reaching a right conclusion. If you should fix upon a net amount per year which Harris would have earned and how many years he would have lived, then find out how much now paid down would equal the result reached by these items.

"On this point, another table has been submitted to your consideration. This is the fourth and last of the tables in 70th volume *Georgia Reports*, and is on page 847. This table is used by multiplying the net income per year which Harris would have earned by the figures in the next right-hand column opposite the number which corresponds with his age. Suppose, to illustrate, you believe Harris to have been 40 years old, and that his net income would have averaged $50 per year, you would look down the column marked age till you come to 40, then multiply $50 by 12 or 10 which stands in the next column opposite to 40. The number 12 supposes interest to be counted at 6 per cent. The number 10 supposes the interest to be counted at 7 per cent. The calculations of this table suppose that you take the table marked Carlisle Mortality Table as your guide in fixing how long Harris would have lived. If you think he would have lived a less number of years, take some age in the Carlisle table (that is in order to use this last table) opposite to which is the number of years which represents his expectancy of life, and then in looking for figures in the last table to use in multiplying with the net income, take the figures opposite his age."—The objections to this charge are three-fold: (*a*) Because no jury could carry in the minds of its respective members the principles involved in such a system of elaborate calculations as is presented in the charge, involving the inverse use of the annuity table. (*b*) Because it allows a jury to put the value of money in Georgia at 6 per cent., when the law of the state fixes it at 7, making a difference of one per cent. against this defendant, in case the said jury

used the aforesaid tables as directed in the charge. It is submitted that if such tables are to be used at all, that multiplier must be selected which is based upon a rate of interest that the law of Georgia fixes. (c) Because with but the Carlisle and the annuity tables in evidence, the charge is incomprehensible to any one, and was evidently given under the belief that all of the tables aforesaid had been introduced in evidence. [In certifying the grounds, the court stated as follows:

"The mortality tables used in evidence were those which appear in the 70th vol. of *Ga. Rep.* The court understood all the tables published together in that volume to be introduced. Of course, the instructions in reference to such tables as were not in evidence were inappropriate. Such instructions, however, tended to benefit defendant, as the two other tables allowed a less expectation of life to the person for whose death the suit was brought."]

(8.) Because the verdict was contrary to evidence and without evidence to support it.

The motion was overruled, and the defendant excepted.

JACKSON & KING, for plaintiff in error.

HOKE & BURTON SMITH, for defendant.

JACKSON, Chief Justice.

Lucinda Harris sued the Central Railroad and Banking Company for killing her husband. The jury found a verdict for the plaintiff of one thousand dollars. The company excepted to the denial of a new trial mainly on the ground that the law of the case, on the facts made, was not given to the jury, but the real defence of the plaintiff in error was wholly ignored in the charge.

The jury was instructed that the omission of the employés of the plaintiff in error to ring the bell as it left the depot to cross Pryor street was negligence, without further instructing them that it was not negligence which could affect the husband of defendant in error if his death was caused solely by his own negligence in jumping off

the train while in motion, notwithstanding an iron-rail barrier was in his way, over which he leaped, and thereby fell between two cars, and was thus killed. There was proof for the railroad company of this defence; and although there was other proof and more witnesses to the point that Harris was killed when trying to cross Pryor street in front of the engine, yet the company had the right to try that issue and have its defence, backed by its witnesses, passed upon by the jury. It matters not which side preponderated in the judgment of the court. It is for the jury to find which had the greater weight; and between the two contradictory and incompatible versions of this disaster, presented clearly by witnesses on both sides, to-wit, whether he was killed by the rashness of his own act in jumping from the cars and falling between them—he having boarded them without a ticket and not as a passenger—thus making his own negligence kill him; or whether he was killed in the act of crossing the street in front of the engine so as to make the ringing of the bell important to him, and thereby making its negligence kill him. If this issue was not presented clearly to the jury by the charge, then the jury did not have the law of the case on the main issue in the case laid before them.

If so, a fair trial, on the law applicable to the facts, was not had, and a new trial should have been granted by the court below.

The railroad company had two defences in this case, either of which would bar any recovery by the plaintiff. One is that the plaintiff's husband caused the killing by his own negligence; the other is that the plaintiff's husband could have avoided the consequence of the company's negligence by ordinary care. The first is found in section 3034 of the Code; the last in section 2972.

The two defences are not the same. They are not identical. Section 2972 presupposes negligence in the company, and the avoiding the consequence or effect of that negligence by the ordinary care of a prudent man. To

illustrate by the case before us: If Harris was crossing Pryor Street, and the bell was not ringing so as to warn him, yet if he saw the approach of the engine in time to get away and did not get off the track, the company was negligent, in that it did not ring, yet Harris could by ordinary care have prevented the consequence, the effect of the bell not ringing and the unexpected approach of the train without the warning the law demands; if he was aware of it, by sight or otherwise, in time to get out of the way and would not, or did not when he could, then section 2972 applied to that defence.

On the other hand, section 3034 enacts that he shall not recover if the injury " is caused by his own negligence." The next paragraph of the same section declares that " if both are at fault," of course in contributing to the injury, then there may be a recovery, but diminished in proportion to the fault of each, which makes the well-known case of contributory negligence, and shows that the fault of each must contribute to the disaster; otherwise the negligence of each would not be contributory.

To illustrate by the case at bar again: If Harris was on the train when it started, and jumped off, as some witnesses swore, his own negligence—the neglect of his own safety—the rashness of jumping off was all his own; and there was no negligence at all of the company contributing to the fall he got between the cars and the death which ensued. The failure to ring the bell—that negligence of the agent or servant of the company—while it was clear negligence by the company, was not negligence which hurt him, which contributed one iota to his fall and the death that followed. The bell might have been ringing furiously and with all the might of the ringer, yet he would have been killed just the same as if it had been still as death.

True, in section 2972, as in section 3034, the doctrine of contributory negligence applies; but the particular act of negligence in proof must be such as contributes to the thing that caused the plaintiff's husband injury. The

failure to ring the bell did contribute to his death, if that death resulted from the crush·under the engine, because if the bell had been rung, he might have heard it as he was passing before that engine and got out of the way; but if he was on board the train, and jumped off when it started, or was about to start, then the failure to ring the bell had no effect at all upon his conduct, but his own rash act alone killed him.

It must follow that the failure to confine the charge that neglecting to ring the bell was negligence to the defense that there could be no recovery if by ordinary care plaintiff's husband could have avoided the consequences of its not being rung, and the entire omission to notice in any way the fact that its not being rung, could not affect the other defence, that he was upon the car and jumped from it, and was thereby killed in the fall between the cars, and there crushed away behind the engine, and where ringing the·bell could not have affected the calamity.

The very able and distinguished counsel for defendant in error saw the force of this exception to the charge, and endeavored to meet it by the reply that the counsel for the plaintiff in error·could not use the exception, because he did not call the·attention of the court to the omission of which he now complains, and cited decisions of this court bearing upon the necessity of his doing so before he could take advantage of the omission.

We think, however, that the cases cited, and the principle on which they rest, do not apply to the clear omission to notice in the charge a plain defence of the company arising out of his evidence so as not to escape the observation of the judge, but to omissions to expand the charge, ·so as to make more clear the point on which he has charged substantially, but not as fully as would have been done had attention been called to it. The courts will not allow a party to lie in wait for the judge when he charges substantially the law covering the case, and then object to the insufficiency of a portion of it; but in every case, the

law of it must be given in substance to the jury, because if it is not given, the general verdict they give is not upon law, the law of the case, but on facts without instructions on the law of the case. The ship is at sea without chart or pilot, and can never reach the port to which it is bound without their guidance. The verdict can never be a legal verdict unless instructions on the law of the case be given by him who presides for that purpose. The omission to cover the case substantially must always set it aside.

And so this court has often ruled. In the case of *Hardin, executor, vs. Almand*, 64th *Ga.*, 582, the 8th head-note lays down the rule thus: " Where the case is fully covered by the general charge, the failure to instruct the jury on a particular branch of it is not error in the absence of a request." The case at bar is not fully covered, in that it ignores one defence, and makes an act of negligence in the company affect that defence, if meant to be alluded to at all, which act could not have possibly affected it.

So in *Bentley et al. vs. Johnson*, 63 *Ga.*, 661, this court say on page 664: " We are clear, however, that the case was not tried on the real issue. If the facts be as set up by the defendants, there ought to be no recovery, because the plaintiff has not complied with the consideration on which the note was given, and the same has totally failed. According to the defendants' plea and proof, the plaintiff's agent guaranteed that the mule would live to make a crop, and if it did not, that he would furnish another as valuable. . . . It did die, and died of a disease it had when sold, before the crop was made, and was wholly worthless, according to defendants' plea and his (their?) evidence, and defendants had the right to have that issue go to the jury, which the court's charge took away from them." And in that case, a new trial was granted, though the charge was, " If you are satisfied from the evidence that at the time of the sale of the mule (the consideration of the contract sued on), the plaintiff expressly refused to warrant the soundness of the mule, then you should find for the plaintiff, even if

you believe the mule was diseased when sold, and died of the same disease," and granted because the other issue referred to was not given to the jury in the charge, though no request was made, nor was the attention of the court called to the omission.

In the case before us now, if the facts set up by defendant's witnesses, to the effect that negligence of plaintiff's husband in jumping from the car alone caused the death, there could be no recovery; and that issue, though clearly made by defendant's proof, was not alluded to in the charge. The plea of not guilty, with that proof believed by the jury, is a bar to any recovery; and though the plaintiff's testimony may be the stronger, the defendant had the right to go before the jury and have the issue tested by them.

So from an early date this court has uniformly held that the law of the case must be given the jury to the extent of covering the substantial issues made by the evidence, whether requested or not, or attention be called to it or not; otherwise the verdict will be set aside.

See *Terry vs. Buffington et al.*, 11 *Ga.*, 337; *Amos vs. Amos*, 12 *Id.*, 100; *Formby vs. Pryor*, 15 *Id.*, 258; *White vs. Dinkins*, 19 *Id.*, 285; *Fain vs. Cornett*, 25 *Id.*, 184; *Glass & Blalock vs. Cook*, 30 *Id.*, 133; *Foster vs. Jenkins & Belt*, *Ib.* 476; *Collins vs. Collins*, 44 *Id.*, 132; *Van Arsdale vs. Joiner*, *Ib.*, 174; *Schofield vs. McNaught*, 52 *Id.*, 69; *Evans vs. Arnold*, *Ib.*, 170; *Bryson vs. Chisholm*, 56 *Id.*, 596; *Clark vs. Hulsey*, 54 *Id.*, 608; *Wylly vs. Gazan*, 69 *Id.*, 510.

In all these cases, it is believed, from an examination of each, the principle is clearly deducible that without any request of counsel or reminder of the court by counsel, the instructions of the court must substantially embrace the rule of law on the issues between the parties which the evidence makes. If that be done substantially, then there is a line of decisions cited by counsel for the defendant in error, to the effect that if the charge be not full enough or clear enough or omits something that would put one side or the other more fairly before the jury than the

charge given does, then the notice of the court must be called thereto, or the party complaining will not be heard here. If there be any exception to this general rule in this court from 11th *Ga.* down to 69th, it is very scarce, and will be found approximating closely to the rule laid down, if not clearly within it.

2. We see no other error in the assignments. There is no complaint of excess of damages, and therefore it is immaterial what measured them.

The judgment is reversed solely because the court in the charge ignored the defence set up by the defendant below, that plaintiff's husband's own negligence—his own rash act—in jumping from the cars killed him, without any negligence at all of the defendant which contributed to that act of his,—the only negligence proved being the neglect to ring the bell, which did not affect in the least the disastrous result of the rashness of the deceased.

Judgment reversed.