He had been accustomed to buy goods from Beeker as a salesman, in Macon at petitioner's store, from samples which Beeker carried, and the telegram was sent because he had written the firm represented by Beeker, that he thought that he, plaintiff, would not go off to buy his goods this season, and if the telegram had been delivered he could and would have been able, without expense to him, to have purchased his goods from Beeker in Atlanta, and would not have been compelled as he was to go to Cincinnati, at great expense to himself, to wit, $150 in travelling expenses, hotel bill and loss of time from his business.

JOHN WALTER ROBISON, for plaintiff.

GUSTIN, GUERRY & HALL, for defendant.

JENKINS *v.* THE CENTRAL RAILROAD AND BANKING CO.

The evidence in this case showing clearly that the plaintiff by the exercise of ordinary care could have avoided the consequences of defendant's negligence, there was no error in granting a nonsuit.

August 1, 1892.                                *Judgment affirmed.*

Railroads. Negligence. Nonsuit. Before Judge Ross. City court of Macon. December term, 1891.

The plaintiff sued the Central Railroad Co. for damages, and was nonsuited. The testimony in his behalf is to the following effect: He was a night watchman for the East Tennessee Railroad Co. at a place near the "Georgia Mills" at the old shops in Macon, between Ash and Hazel streets, and in that vicinity; and had been so employed about seven months. It was his duty to watch the cars and notice the seals on them. They were on the track between the streets named, which were about 400 feet apart and were public crossings over the railroad. To the right of this track are two tracks of the defendant, each of the three tracks being

five, six or seven feet apart, all on about the same grade. He was on the center of these three when he was hurt. It was on the night of the 16th of May, 1889. He was sixty-two years old. At 33 minutes past eleven o'clock he looked at his watch and crossed a ravine over which the track runs, and about two minutes afterwards he was struck by the defendant's passenger-train from Columbus, which was arriving half an hour later than its schedule time. When it struck him he was standing on the end of a cross-tie, about midway between the two streets. He stepped on the cross-tie, turned and saw there a switch-engine; and he saw two signals, the first of his knowing anything about the train. He was trying to get off the track when he was struck; he jumped, but was struck before he hit the ground. He was familiar with the schedules of the passenger-trains. At that time only two trains passed along there at night: the Atlanta train at 50 minutes past ten o'clock, and the Columbus train at 3 minutes past eleven o'clock. The Atlanta train had gone in on schedule time. The Atlanta trains went into the depot on the track where he was standing; the Columbus trains went in on the track next on the right. When he got on the track he had just come out from between the cars, going down taking seals, and had started back up. He was doing his work. He got on there to cross the ravine or sewer (7 or 8 feet wide and about 8 feet deep) which ran under the tracks. He had been accustomed to walk over the track there; everybody walked over it there; there was no other place to cross, but everybody that passed up and down there crossed this ravine on the track; between 50 and 100 and 200 people had crossed there; this has been the custom for six years; everybody that wanted to go along there passed this way, the people of the neighborhood, the shop men and the railroad men. In going his rounds and watching the cars on the East Tennessee track he had to

go on this track where he was struck, because there was
no place for crossing except where he was. There was
no place between the tracks where he could cross. The
track he crossed was an open space, about five or six feet
deep and five feet wide. He could not cross it without
getting on something to cross over. There was no other
way he could have walked over that culvert, except on
cross-ties. He did not walk down between the tracks,
because it was washed out there. He could not have
walked over the washout as well as he could by walking
on the cross-ties. They had been digging there that
day, but everybody walked on the cross-ties. The
washout was not covered that night; there was no plank
across it; there was not a thing there for a footway so
as to cross between the two tracks; but a footway was put
there two or three days after he was hurt. There was
a footway when he was there; now they have four
heavy planks covering the culvert, put there three or
four days after he was hurt. There was not a plank
across the culvert between the two tracks the night he
was hurt. He does not know who put them there. The
hands had been digging out dirt right where he was
standing. If he had been on the ground he could not
have examined the cars as from where he was standing,
because he would have been so low down that he could
not reach up to see them and see that the seals of
the cars were broken. He was at the best place to
examine the cars and seals. He had been there
100 times, and had examined the cars from that
point. When he got on the track he did not hear
or see any train, and did not expect any; he thought
the train had gone in. He had been on the track
about a minute and a half or two minutes. He
happened to stop, and looked at the engine that had
come in on the East Tennessee road, bringing cars; and
he looked back towards the switch and saw a lamp.

This is the switch at which passenger-trains are turned off to come into the depot. Two signals were given with the lamp up and down, which mean to come ahead; those signals indicated that the train was coming in on the Columbus track, not the Atlanta track on which he was standing. He knew what the signals meant, for he had set switches himself. The track on which he was standing was a little curved. When he looked at the lamp he heard a roaring, and turned to see where it was; and it was "near him out a little piece." As soon as he saw it was on the track he was, he jumped. As he jumped something struck him and rendered him unconscious. When he regained consciousness he was lying 12 or 14 ties distant from where he was standing when struck. At the time the train struck him his face was turned to it. He saw the lamp of the switch-man giving the signals, and turned back to see if he saw the train; and the pilot struck him. This train was running from fifteen to twenty or twenty-five miles an hour; no man in his place could tell. If it had been running five miles an hour (the limit of speed allowed by the city ordinance), he would have had plenty of opportunity to get off the track. No whistle was blown; he did not think the bell was ringing. A man sitting in the engine could have seen him 200 yards. It was a moonshiny night. The train had four coaches. Had it been going five miles an hour, the engineer by applying air-brakes could easily have stopped it in thirty or forty feet; if it was going 15 or 20 miles an hour, he could not well stop under 100 feet. In fact it ran 125 or 130 feet after striking the plaintiff. It was not more than a car-length from him when he heard the roaring. As soon as he saw it was on the track he was on he jumped. He did not get out of the way before, because there was no danger that he saw or heard of or knew of. From the time he first discovered the danger

until he jumped, he could not have·got off the track so as to avoid injury. Had he .been in the middle of the track when he first saw the train, it would have run over and killed him; being on the cross-ties was all that saved him. It is 12 to 18 inches from the rail to the end of the ties; and the pilot of the engine extends about 8 inches outside of the rail. The East Tennessee track was full of cars; the East Tennessee road has several tracks there running side by side; all the tracks had cars on them, and he went among them all. If the Columbus train had passed there while he was between the cars, he might not have seen or heard it; a great many trains passed that he did not see; it was not common for a train to run by without his noticing it, whether the bell was ringing or not. He had noticed the jar of the rails from a running train. If he had been looking that way, he could have seen the engine 200 yards. He did not hear the train that struck him make any noise. He was looking at the cars of the East Tennessee road until the train got right on him. The switch (where he saw the signals) was about 130 or 140 feet from him. The switchman was changing it, and had a lantern. People and employees used the defendant's track for passing and repassing, because there were no cross-ties on the East Tennessee track so as to make a passage-way from this culvert. It was impossible otherwise to go that way and come over the culvert. There was no way of going directly through the East Tennessee yard, because of the culvert there. There was testimony as to the plaintiff's pain and suffering and expense consequent on the injury, etc.

DESSAU & BARTLETT, for plaintiff.
R. F. LYON, for defendant.