## POWELL *v.* BERRY.

1. If one voluntarily drinks liquor until he is intoxicated, and so negligently operates an automobile as to cause injury to another, his intoxication will furnish no excuse for his negligence or its proximate results.

2. Voluntary intoxication is not per se negligence. But in an action to recover on account of an alleged negligent tort, in which it was alleged, on the one hand, that the defendant was intoxicated and negligent, and, on the other hand, that the plaintiff himself had been drinking and was negligent, so as to affect his right to recover, the condition of the parties respectively as to intoxication is a fact which could be proved for the consideration of the jury in connection with the other evidence as to negligence, if any, in determining the diligence or negligence of the parties respectively.

(*a*) If in some cases the undisputed evidence may be such that the case

may be controlled by the court as matter of law, this is not one of them.

(b) If a person was injured by reason of the negligent operation of an automobile by another, and was himself negligent, in determining the effect of such negligence on his right to recover for the injury, if he had voluntarily drunk liquor until he was intoxicated, this would furnish no excuse for his negligence, or relief to him from the consequences thereof.

(c) Negligence as herein employed refers to the failure to use that degree of care which it was the duty of the parties respectively to use under the circumstances, without discussing whether in the particular case it would be as to the one or the other extraordinary, ordinary, or slight diligence.

3. Some of the requests to charge did not contain accurate statements of the law. Some were covered by the general charge.

4. Where suit was brought to recover for the alleged negligent homicide of one who was conducting a dairy, it was error to charge as follows: "You look to the testimony and determine what the gross receipts from the dairy were, and then you take all the expenses that contributed to this fund, the rent of his land, and any expenses that he incurred in and about the running of his dairy, and the difference between the total expenses and the total receipts would be his net earnings, and that would be his average yearly loss; and you multiply his average yearly loss by the expectation of years, and that would give you the gross amount of the plaintiff's recovery."

5. Under previous rulings of this court, in a suit for a negligent tort, where the question of diminution of damages by reason of negligence on the part of the person injured is not raised by the pleadings of either party, it does not constitute reversible error for the court, in the absence of a request, to omit to charge on that subject, where he has charged fully as to the effect of the negligence of the injured person upon the right to recover at all; although it is the better practice to charge on the subject of comparative negligence and diminution of damages where the evidence authorizes it.

August 21, 1916.

Action for damages. Before Judge Pendleton. Fulton superior court. May 25, 1915.

Mrs. F. M. Berry brought suit against George Powell, to recover damages for the homicide of her son. Her petition alleged, that her son was riding with the defendant in his automobile about eight o'clock at night; that the car was driven by the defendant at a rapid and reckless rate of speed, and that, when a curve in the road was reached, the defendant did not slacken the speed, by reason of which the car ran from one side of the road to the other, and finally off the highway upon an embankment, where it suddenly stopped, throwing the plaintiff's son from the car, which

fell upon him, and his head struck against a rock or some other hard substance, from which death resulted; that the plaintiff's son had nothing to do with the operation of the car, and no control over or direction of the defendant, but was riding as a guest of the latter; that the defendant was under the influence of liquor or other strong drink to such an extent as to make him careless and reckless, and regardless of the safety of the plaintiff's son; and that her son lost his life through the negligence and carelessness of the defendant. There were also allegations as to the age and earning capacity of the deceased, his contribution to the plaintiff's support, and her dependence upon him.

The defendant denied liability, or that he was guilty of negligence as alleged. He averred that he was driving the car cautiously and carefully and at a moderate rate of speed; that, as it was going around a curve, a large touring-car, running at a rapid rate of speed, approached on the same side of the road as that on which was the defendant's automobile; that it was equipped with and was using brilliant headlights, the light of which flashed into the defendant's eyes and momentarily blinded him; that, in order to avoid a collision with the approaching car, he attempted to cross the road, but his car was struck by the other and turned completely around; and that he was in no way to blame for the injury to the decedent. By amendment the defendant alleged that at the time of the accident both the plaintiff and the defendant were riding in the car of the latter on a public highway; that they were engaged in a joint enterprise, and were returning from a place whither they had gone to obtain whisky for their joint consumption; that the whisky was purchased by the decedent; that both of them were in an intoxicated condition on a public highway of the State; that the defendant was intoxicated and the deceased knew it when he entered the car, and he remained there with full knowledge of the defendant's condition, and made no effort to control the defendant in the operation of the car, and did not remonstrate with him about his driving; and that the deceased was guilty of such negligence in entering the car and remaining there as to prevent a recovery.

The jury found in favor of the plaintiff $4,117. The defendant moved for a new trial, which was refused, and he excepted. Other necessary facts appear in the opinion.

*Simmons & Simmons* and *Rosser, Slaton, Phillips & Hopkins,* for plaintiff in error.

*J. Caleb Clarke* and *George Westmoreland,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. Voluntary drunkenness furnishes no excuse for negligence; nor does it relieve a drunken man from exercising the degree of care required of a sober man in the same circumstances. If a person is required to use ordinary care, this means that care which every prudent man would exercise under similar circumstances. In taking the conduct of every prudent man as a standard, reference is made to the normal man; that is, the sober man. Ordinary care is not to be measured by what every prudent drunken man would do under like circumstances, but what every prudent sober man would do under like circumstances. If ordinary care under certain circumstances would require that a certain thing should be done, the requirement is binding on a man whether sober or drunk; and getting drunk will not relieve the person from that duty. To hold otherwise would be to put a premium upon drunkenness. Woollen & Thornton on Intoxicating Liquors, §§ 1184 et seq. A similar rule has been applied in holding that voluntary drunkenness furnishes no excuse for crime. If ordinary care is not the measure of diligence required in the particular case, what is said above is equally applicable to the degree of diligence which is required.

2. As drunkenness does not furnish an excuse for negligence, neither does it constitute negligence as matter of law. It is possible, whether probable or not, for one man to act with the care of a prudent man while intoxicated, and for another to act with a lack of ordinary care while sober. If the conduct of the drunken man measures up to the standard fixed by law, the drunkenness alone will not authorize a recovery for an injury caused by him. Still it is one of the facts entering into the transaction, and is provable as such. It is not negligence per se for a man to have a defective vision, or to have an impotent hand; but if a person so afflicted should undertake to drive a powerful automobile on a crowded thoroughfare, and injury should occur from a collision with another passer, the condition of the driver of the machine would be a provable fact, under proper allegations, for consideration by the jury in determining whether in his entire conduct he

was negligent. It is not negligence per se to have a cork leg. But it may be negligent for a man with a cork leg to chase and seek to board a moving train. Or the condition of a passenger, known to a carrier, may have an effect upon what due care requires of the carrier.

As liquor may affect not only the brain, but the nerves, the muscles, and the eyesight, if a person voluntarily becomes intoxicated, and in that condition undertakes to drive an automobile, and injury results to another from the negligent operation of it, his condition would be a fact for the consideration of the jury, in determining whether he acted with diligence or negligence. Or, if injury should result to him, and he should bring suit, whether he had voluntarily created a condition which affected his action is a matter which the jury may consider in determining whether he was diligent or negligent. It has sometimes been said that this condition of the person whose act is under consideration is a part of the res gestæ of the transaction. One riding in an automobile is bound to use ordinary care for his own safety. If there should be evidence tending to show that he voluntarily became so intoxicated as to be unable for that reason to exercise ordinary care, and did so fail, and that by the use thereof he could have avoided the consequences to himself of the negligence of the driver, such question would be one for the jury, under proper instructions. One riding in a car driven by another, though a mere guest and having no control over the person driving the car, may be guilty of such negligence as to preclude a recovery for a personal injury resulting from negligent operation of the car. If a driver, from intoxication, is in a condition which renders him incapable of operating it with proper diligence and skill, and this is known or palpably apparent to one entering the car, this is a fact which may be proved for the consideration of the jury, along with other facts, to throw light on the question of whether such person exercised ordinary care in entering the car or in remaining in the car, or in reference to his conduct while in it. So, if a guest took drinks of liquor with the owner and driver of the car, some of the liquor being furnished by the owner and some by the guest, this may be shown for the purpose of aiding in the determination of whether the guest was negligent. See, in this connection, *Rollestone* v.

*Cassirer,* 3 *Ga. App.* 161 (4), 174 (59 S. E. 442); 1 Shear. & Redf. Neg. (6th ed.) §§ 93, 110, and notes.

In some States statutes have been enacted which are commonly known as civil damage laws, which give a right of action against liquor dealers to innocent parties who sustain injury by the intoxication of persons supplied with liquor by the dealers, or the consequences of such intoxication, or by the acts of the intoxicated persons, or by the furnishing of liquor to minors or drunkards. The action so given is entirely statutory; the elements necessary for a recovery are dependent upon the particular statute; and a discussion of decisions based upon them will be omitted, though some of them deal with the subjects of proximate cause and contributory negligence. Black on Intoxicating Liquors, §§ 277 et seq.

In some jurisdictions there are decisions declaring that the jury can be instructed that particular acts do or do not constitute negligence which will, or will not, authorize or prevent a recovery. But in this State, as a general rule, whether an act is negligent is a question for the jury; and except where a given act is forbidden, and rendered negligent per se as to the injured person, or an act is commanded and its omission rendered negligent, by a statute or valid municipal ordinance, the presiding judge should not instruct the jury what ordinary care requires to be done in a particular case. *Atlanta & West Point R. Co.* v. *Hudson,* 123 *Ga.* 108 (51 S. E. 29), and cit.; *Central of Ga. Ry. Co.* v. *Cole,* 135 *Ga.* 72 (68 S. E. 804); *Atlantic Coast Line R. Co.* v. *McDonald,* 135 *Ga.* 635 (6), 636 (70 S. E. 249). Nevertheless, in some cases, the undisputed facts may be so clear as to leave no room for a jury to find save one way, and the question may become one of law and be dealt with on demurrer or motion for a nonsuit. This case is not of that character. The evidence as to the condition of the parties, and how the drinking began, was not so clear as to authorize the judge to declare as matter of law the status of each as to negligence. The defendant did admit in his amended answer his intoxication. In this State also the doctrine of comparative negligence prevails, and it is not all negligence which contributes to an injury that will necessarily prevent a recovery. Civil Code (1910), § 4426. This case was before the Supreme Court in 143 *Ga.* 59 (84 S. E. 121), on exception to the overrul-

ing of a demurrer. What was said in the opinion, in reference to there being nothing to show that the decedent himself was aware of the defendant's condition, must be considered in the light of the question then for decision, and not as ruling that the court should give charges like those requested on the trial.

Evidence that while the plaintiff's son was riding with the defendant in the automobile of the latter they took several drinks together, and then went to a place where the plaintiff's son procured three bottles of liquor, from which they took additional drinks, and that the injury occurred while they were returning from such place, would not require the giving of a charge that if they were on the same mission, or on a joint pleasure trip or a common undertaking, and were using the automobile for that purpose, the plaintiff's son was under a duty to take "the necessary steps" to prevent the negligence of the owner of the machine and to prevent any injury to himself. The evidence on this subject was for the consideration of the jury in determining the diligence or negligence of the parties. But it did not require the giving of the requested instruction as stated.

3. The case naturally divides itself into two parts: (1) Was the plaintiff entitled to recover at all, or not? (2) If so, what was the measure of damages? Relatively to the conduct of the defendant, and its effect on the right to recover at all, the crucial questions would be, did he fail to exercise that degree of care which the law required of him, and, if so, was such failure the proximate cause of the death of the plaintiff's son? Relatively to that of the plaintiff's son, and its effect on the right to recover at all, they would be whether he was negligent, and, if so, whether his conduct was such as to prevent a recovery for his homicide. This is only a brief outline of the points, and not a full statement of them. But the acts of the parties, their condition, and the like would be matters for consideration in determining the controlling questions. Most of the requests to charge were defective in undertaking to state, in effect, that certain specific things would constitute negligence, or prevent a recovery, and in some instances even without making reference to their possible effect in connection with the injury. Some of the requests were covered by the general charge. The presiding judge may have charged somewhat briefly on the subject of the condition of the parties as to intoxica-

tion; but it is unnecessary to discuss each of the various requests at length, and to point out specifically the inaccuracies of some, and to show where others were sufficiently covered by the charge.

4. The decedent conducted a dairy. On the subject of the measure of damages the court gave the following charge: "You look to the testimony and determine what the gross receipts from the dairy were, and then you take all the expenses that contributed to this fund, the rent of his land, and any expenses that he incurred in and about the running of his dairy, and the difference between the total expenses and the total receipts would be his net earnings, and that would be his average yearly loss; and you multiply his average yearly loss by the expectation of years, and that would give you the gross amount of the plaintiff's recovery." It was error to assume that if a man at a particular time was deriving a certain net income from a dairy business, the same net income would continue during his expectation of life and would represent his earning capacity, and to charge in effect that the net loss for one year, or even the average for several years, multiplied by the number of years of the dairyman's life expectancy, would give the gross loss, or, as the court expressed it, "the gross amount of the plaintiff's recovery." This was error for two reasons: first, the question to be determined was as to the average earning capacity of the decedent, not the actual net earnings of his business; and second, it left out of consideration altogether any contingencies, and took it for granted that the net earnings of the dairy business in the future would be the same as those in the past, and would represent his earning capacity during life.

5. It has been held not to be error requiring a reversal, in the absence of a request, to omit to charge on the subject of reducing damages by reason of negligence on the part of the injured person, unless perhaps one party or the other raises such question in his pleadings; although it is the better practice to do so where the evidence authorizes such a charge.

Except as herein indicated, there was no error requiring a reversal.

In the foregoing discussion no reference has been made to what is known as the automobile law of 1910, amended in 1913, and embodied in 1 Park's Code, § 828 (a) et seq., and 6 Park's Code, § 528 (c). Neither party invoked that statute or treated it as

applicable to the facts of this case. And we have dealt with the case as made. *Judgment reversed. All the Justices concur.*

ATKINSON, J., specially concurring. I concur in the ruling announced in the fourth division of the opinion, but not in all that is said in the other divisions. The plaintiff's right to a recovery was limited to the grounds of negligence alleged in the petition. These were in substance that the defendant was intoxicated "to such an extent" as to render him "careless and reckless," and while in such condition driving his automobile at the reckless rate of speed of sixty miles per hour, and upon approaching a curve in the road, he did not slacken the speed, but continued, and the machine ran first from one side of the road to the other, and finally left the road and ran against an embankment, causing the plaintiff's son, who was his guest, to be thrown from the machine and killed. These allegations, properly construed, mean that the injury was the result of the defendant's recklessness in driving the machine, and that his recklessness was the result of his intoxication, thus making an unbroken chain of causal events or direct relation between defendant's intoxication and the injury. Therefore, according to the allegations of the petition, intoxication of the defendant is made a basal element of negligence for which damages are sought to be recovered. Not only will the plaintiff be limited to the alleged grounds of negligence for recovery, but as the allegations, as against the plaintiff, amounted to admissions in judicio, the plaintiff would be estopped from denying them; and hence as against the plaintiff they are to be treated as true. In addition to such admissions there was uncontradicted evidence to the following effect: In the afternoon, between four and five o'clock, Berry, who was the person killed, was at a store at Buckhead, near Atlanta. The defendant, Powell, drove up to the store in his automobile. Powell was drinking to some extent. An engagement was made between them to go driving in the automobile. Before going they went into the rear end of the store and exchanged drinks from bottles which each had, Powell giving the first drink. Before they left the store, each of them, with a third person, took two drinks from a jug which Powell brought into the store. After this they proceeded to ride in a direction which led away from Atlanta. They stopped at a certain place where Powell proposed to get out, but Berry protested and urged that

Powell "crank up" the machine and proceed with the ride, which he did. They finally went to the house of a man in the country, where Berry bought three quart bottles of whisky, from which they each drank at the house, and treated others who were present, and upon leaving in the automobile each had one of the bottles of whisky. Shortly thereafter, which was about eight o'clock at night, just before reaching the curve at which the catastrophe occurred, Berry insisted upon Powell taking another drink out of his bottle, which was done, and the bottle was returned to Berry. Upon rounding the curve, the injury occurred; and when Berry's body was removed, it was found that he had a broken whisky bottle in his pocket. It thus appears, first, that the plaintiff's son was a voluntary participant in the excursion which the two made about the country, and which lasted for several hours; second, that Berry, the deceased, participated in causing the defendant's intoxication, by drinking with him and continuing the excursion while he was drinking the intoxicants, and by giving him whisky, the last drink being accepted by the defendant almost immediately before the catastrophe. Under these circumstances, the plaintiff's son was obliged to know of the defendant's intoxication, and that he had helped to bring it about. The chain of events connecting Berry with the result of the catastrophe was complete. This is all the more apparent when the dangerous character of the machine is considered, together with the necessity for skill and care in operating it. If Berry was also drunk, his drunkenness would not excuse his negligence or demeanor. If he was not drunk, for the greater reason should he have desisted from continuing the excursion and encouraging the intoxication and recklessness of the defendant. Under the circumstances in which he was a principal actor, ordinary care would have required Berry to desist. No reasonable mind could draw any other inference or conclusion from the undisputed evidence than that the excursion was dangerous from its inception, and that such an injury as occurred would probably result. Berry's participation amounted to independent negligence, and showed an utter want of ordinary care, while within his own knowledge the negligence of the defendant was in progress.

In the Civil Code, § 4426, it is declared: "If the plaintiff by ordinary care could have avoided the consequences to himself

caused by the defendant's negligence, he is not entitled to recover. But in other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." It is also a doctrine of the common law that a plaintiff can not recover for a tort if the injury was done by his consent or was caused by his negligence. See *Macon etc. R. Co.* v. *Johnson,* 38 *Ga.* 409. In *Western & Atlantic R. Co.* v. *Ferguson,* 113 *Ga.* 708 (39 S. E. 306, 54 L. R. A. 802), Mr. Justice Cobb discussed at length the code sections which announce the above rules, and in the course of the opinion said: "If the plaintiff knows of the defendant's negligence, and fails to exercise that degree of care and caution which an ordinarily prudent man would exercise under similar circumstances to prevent an injury which will result from such negligence, it is well settled that he can not recover. See *Ga. R. Co.* v. *Neely,* 56 *Ga.* 544; *Central R. Co.* v. *Harris,* 76 *Ga.* 508; *Americus R. Co.* v. *Luckie,* 87 *Ga.* 6 [13 S. E. 105]; *Briscoe* v. *Railway Co.,* 103 *Ga.* 224, 227 [28 S. E. 638]; *Central R. Co.* v. *Dorsey,* 106 *Ga.* 826, 828 [32 S. E. 873]; *Hopkins* v. *Railway Co.,* 110 *Ga.* 85, 88 [35 S. E. 307]. If the negligence of the defendant was existing at the time that the plaintiff was hurt, and he, in the exercise of that degree of care and caution which an ordinarily prudent person would exercise under similar circumstances, could have discovered the defendant's negligence, and, when discovered, could by the exercise of a like degree of care have avoided the same, then he can not recover. See *Atlanta R. Co.* v. *Loftin,* 86 *Ga.* 43, 45 [12 S. E. 186]; *Americus R. Co.* v. *Luckie,* supra; *Brunswick R. Co.* v. *Gibson,* 97 *Ga.* 489, 497 [25 S. E. 484]; *Cain* v. *R. Co.,* Id. 298 [22 S. E. 918]; *W. & A. R. Co.* v. *Bradford,* 113 *Ga.* 267 [38 S. E. 823]. If at the time of the injury an ordinarily prudent person, in the exercise of that degree of care and caution which such a person generally uses, would have reasonably apprehended that the defendant might be negligent at the time when and place where the injury occurred, and, so apprehending the probability of the existence of such negligence, could have taken steps to prevent the injury, then the person injured can not recover, if he failed to exercise that degree of care and caution usually exercised by an ordinarily prudent person to ascertain whether the negligence which might have been reasonably apprehended really existed. See *W. & A. R. Co.* v. *Bloom-*

*ingale,* 74 *Ga.* 604, 611; *Smith* v. *R. Co.,* 82 *Ga.* 801 [10 S. E. 111] ; *Jenkins* v. *R. Co.,* 89 *Ga.* 756 [15 S. E. 655] ; *Central R. Co.* v. *Attaway,* 90 *Ga.* 657, 661 [16 S. E. 956] ; *Macon St. R. Co.* v. *Holmes,* 103 *Ga.* 655 [30 S. E. 563] ; *Lloyd* v. *R. Co.,* 110 *Ga.* 167 [35 S. E. 170]. If there is anything present at the time and place of the injury which would cause an ordinarily prudent person to reasonably apprehend the probability, even if not the possibility, of danger to him in doing an act which he is about to perform, then he must take such steps as an ordinarily prudent person would take to ascertain whether such danger exists, as well as to avoid the consequences of the same after its existence is ascertained; and if he fails to do this, and is injured, he will not be allowed to recover, if by taking proper precautions he could have avoided the consequences of the negligence of the person inflicting the injury." When the principles reiterated by Mr. Justice Cobb as above are applied to the present case, it is clear, without further multiplying authorities, that a state of circumstances existed which so connected Berry with the causative negligence producing the injury that he could not recover. When the case was before this court on exception to a judgment overruling a demurrer (143 *Ga.* 59), it was held: "Where in a suit brought by a mother to recover for the tortious homicide of her son the petition alleges that the injuries to the son which resulted in his death were the result of the defendant's driving his automobile at a dangerous and negligent rate of speed around the curve of a road, that the decedent was sitting on a back seat of the automobile and had no control or direction of the defendant, the driver and owner of the car, who was then under the influence of liquor to such an extent as to make him careless and reckless, and that in consequence of the carelessness and negligence of the defendant her son was killed by the overturning of the machine, there being nothing in the petition to show that the decedent himself was aware of the defendant's intoxicated condition, the court properly overruled a general demurrer to the petition." The clear inference was that the judgment overruling the demurrer would not have been affirmed if it had appeared upon the face of the petition that the plaintiff's son was aware of defendant's intoxicated condition. In *Lynn* v. *Goodwin,* 170 Cal. 112 (148 Pac. 927, 9 Neg. & Comp. Cas. Ann. 915), it was said: "While it is true that in general the negligence of

the driver of a vehicle is not imputable to a passenger so as to bar that passenger's right of recovery, . . yet the conduct of the plaintiff in riding and in continuing to ride in an automobile when he must have known that the driver was intoxicated established independent negligence upon the plaintiff's part, apart from the driver's negligence, barring the right of recovery." See also Brommer *v.* Pennsylvania R. Co., 179 Fed. 577 (103 C. C. A. 135, 29 L. R. A. (N. S.) 924) ; Christopherson *v.* Minneapolis etc.· Ry. Co., 28 N. D. 128 (147 N. W. 791, L. R. A. 1915A, 761). Where the evidence will admit an issue as to whether certain facts show negligence or want of ordinary care, the question is for the jury. But it is a mistake to hold under all circumstances, where the charge of negligence on the one hand, or want of ordinary care on the other, is made, that the question is for the jury. If the facts are undisputed and there is no basis for reasonable minds to differ as to the inferences or conclusions to be deduced therefrom, the question becomes one of law. Each case must stand upon its peculiar facts. Among cases holding the evidence insufficient to authorize submission of the case to the jury, or a verdict for the plaintiff, are those collated in the excerpt, supra, from the opinion in *W. & A. R. Co.* v. *Ferguson,* supra. While the facts of these cases are different from those now involved, the cases sufficiently illustrate the rule above stated in regard to the right of the court to pass upon cases where as matter of law negligence or want of ordinary care is charged; and under the pleadings and evidence a verdict for the defendant was demanded.