## HOPKINS *v.* SOUTHERN RAILWAY COMPANY.

1. Upon the hearing of a certiorari, the answer to the writ, when not excepted to or traversed, will alone be considered by the superior court in ascertaining what occurred upon the trial in the court below.

2. Where the only evidence identified by the answer to the writ of certiorari as having been submitted to the jury, upon the trial of an action brought in a city court by a husband against a railroad company for the killing of his wife, clearly showed that the wife, by ordinary care, could have avoided the consequences to herself of the defendant's negligence — which was not wanton or criminal, and that her homicide was the result of her gross negligence, the railroad company was not liable, and there was no error in refusing to sustain the certiorari sued out by the plaintiff upon the ground that the verdict for the defendant was contrary to the evidence.

Argued February 1,— Decided March 1, 1900.

Certiorari. Before Judge Candler. DeKalb superior court. April 28, 1899.

D. G. Hopkins sued the Southern Railway Company for damages for the killing of his wife. The case was tried before a jury in the city court of DeKalb county, and a verdict rendered for the defendant. Plaintiff carried the case, by certiorari, to the superior court. The certiorari was overruled, and the plaintiff excepted. There are forty-two paragraphs in the petition for certiorari, and twenty assignments of error therein. Twenty-two paragraphs are devoted to the evidence; and the petition sets out what purports to be the testimony of twenty-one witnesses. With reference to the evidence of all these witnesses, save one, the judge of the city court answered: "As to the allegations" of the petition for certiorari, "purporting to set out the testimony offered on said trial, this respondent

is unable to certify whether the same are true or not, because of the fact that the evidence in the case was, by agreement of counsel for both plaintiff and defendant and under order of the court, taken down by a stenographer, and this respondent did not keep a memorandum of what was offered or what the testimony was, and, without a transcript of the stenographic notes, is unable to answer more specifically." Paragraph 23 of the petition for certiorari set out certain instructions which it was alleged plaintiff's counsel requested the court, in writing, to give to the jury. In response to this paragraph the answer was: "Respondent says that counsel for plaintiff did present certain requests to charge, some of which were given and others were not, but were marked 'refused' and signed by the court and returned to plaintiff's counsel. The charge was attached to the petition for this writ [and] will show what was given in charge, and whether or not this particular request complained of was refused or not must be shown by the original request itself, which was last in the custody of counsel for plaintiff." The 24th paragraph was as follows: "The court then charged the jury, which charge is in writing, and petitioner hereto attaches a complete copy of the charges and marks the same 'Exhibit C,' with reference thereto prayed. Exhibit 'C' is a correct copy of the charges as approved by the court, and contains the whole charge as given by him." To this paragraph the judge of the city court answered: "The allegation of paragraph 24 is true, and the charge as given appears attached to the petition and bears the approval of the court." From the copy of the charge of the court, attached to the petition for certiorari, it appears that this charge was divided into twelve paragraphs. Paragraphs 25 to 38, inclusive, of the petition for certiorari purport to set out portions of the charge of the court, and assign error upon the same, in each instance designating the page and paragraph of the charge where the instructions complained of may be found. Paragraph 39 of the petition for certiorari assigns error upon the charge as a whole. The answer of the judge to these paragraphs was as follows: "The allegations of paragraphs 25 to 38, inclusive, relate to matters of law, which are to be passed upon by the judge of the superior court, and are not matters for

this respondent to answer." Paragraph 22 of the petition stated that W. J. O'Neal was introduced and sworn as a witness by the defendant, and purported to give the substance of his testimony. The answer to this paragraph was, that "Paragraph 22, being a transcript in narrative form of the evidence of the engineer O'Neal, taken from the stenographer's notes, is correct and sets forth the material parts of the evidence of the witness O'Neal."

*Hunt & Golightly,* for plaintiff. *Dorsey, Brewster & Howell* and *Sanders McDaniel,* for defendant.

Fish, J. The petition for certiorari complained of numerous errors which it alleged the judge of the city court committed upon the trial of this case. In his answer to the writ of certiorari the judge failed to specifically answer most of the allegations of the petition; and as the judge of the superior court could only consider the answer, it not being excepted to and not traversed, there were few points made for his decision. It is now a well-settled rule, that upon the hearing of a certiorari the answer to the writ, when not excepted to or traversed, can only be looked to in ascertaining what occurred upon the trial in the court below. *Warren* v. *Wilson & Creekmur,* 53 *Ga.* 372; *Akridge* v. *Watertown Steam Engine Co.,* 77 *Ga.* 50; *Robinson* v. *Veal,* 78 *Ga.* 300 (2); *Gartrell* v. *Linn,* 79 *Ga.* 700; *Knowles* v. *Coachman,* 109 *Ga.* 356. As to the assignment of error upon the refusal of the judge to give in charge the written request as set out in the petition for certiorari, his answer fails to certify whether or not such charge was requested. The answer stated that certain requests to charge were made, some of which were given and others not, those refused being so marked, signed by the judge and returned to plaintiff's counsel, and whether the alleged request set out in the petition was refused or not could only be ascertained by examining the original, which was last in the hands of plaintiff's counsel. Manifestly, therefore, this assignment of error could not be considered by the judge of the superior court, as the allegations of fact upon which it was predicated were not verified by the answer. Nor was the judge of the superior court bound to consider the various assignments of error upon the different paragraphs of the judge's charge.

The petition for certiorari alleged that the entire charge of the court was attached to it as an exhibit, and that it was divided into paragraphs; and then proceeded to quote from and assign error upon nearly all of such paragraphs. The answer admitted that a copy of the charge as given was attached to the petition, but failed to say whether or not the various alleged portions of the charge set out in the petition and upon which error was assigned were or were not given, and left it to the judge of the superior court to compare the alleged parts of the charge set out in the petition with the copy of the charge attached thereto, in order to ascertain whether the paragraphs in the petition were correct. This was not a specific answer to the allegations of the petition, and we do not think that the judge of the superior court was bound to go to the trouble of ascertaining the truth of the matter in this roundabout way. The petitioner should have excepted to the answer and have had it made more specific. While the petition, in numerous paragraphs, set out what purported to be the evidence that was introduced upon the trial, the answer fails to identify any of it except that of the witness O'Neal, who testified in behalf of the defendant, and the superior court, therefore, could consider his evidence alone.

The court did not err in overruling the ground of the certiorari that the verdict for the defendant was contrary to evidence. As we have said, the only evidence that the judge of the superior court could consider was that of O'Neal, the engineer of the defendant's train. His evidence was amply sufficient to warrant, if not to demand, a verdict in favor of the defendant. Though the railroad company was guilty of negligence, in that its engineer failed to check and continue checking the train when he reached the blow-post established for the crossing upon which plaintiff's wife was killed, yet after the negligence of the railway company began, and it was apparent to the decedent that the engineer was not checking the train but that it was coming to the crossing at an extremely high rate of speed, it was in her power to have avoided danger from the negligence of the defendant by the exercise of ordinary care. Instead, however, of exercising ordinary care, her conduct, subsequently to the period at

which the negligence of the defendant company began and was apparent to her, was itself so grossly negligent as to debar her husband of the right to recover for her homicide. According to the engineer's testimony, when he first saw her he was in four or five hundred yards of the crossing, and the train was going at a speed of fifty to sixty miles an hour. "She came up from a little sink, from the public-road grade, and started on a run towards the crossing." She was between fifty and seventy-five feet from the crossing. "When [he] first saw her running towards the track, [he] was in three hundred yards of her, and she looked like she was trying to make the public crossing." She was looking right at the train, and did not take her eyes off it. "She seemed to be trying to outrun it to the crossing." "She was running in the direction of the public crossing, looking over her shoulder at [the] train." The reason he did not stop the train was because he could not. He supposed she would stop before she got to the railroad, "didn't think that she would run right on to the track, right in the way of the train, and she looking at it." He put on brakes just before he got to the crossing, when he saw that she would attempt to cross ahead of the train, and was then seventy-five or one hundred yards from her. This evidence shows such reckless conduct on the part of the decedent as would keep the railroad company from being liable in damages for her death, unless it was guilty of wanton or criminal negligence. Civil Code, §§ 2322, 3830; *Southern Railway Co.* v. *Blake,* 101 *Ga.* 217; *Parish* v. *Western & Atlantic R. Co.,* 102 *Ga.* 285. Under the testimony of O'Neal, we do not think that the defendant was guilty of wanton or criminal negligence. He was the engineer who had control of the locomotive, and the responsibility of the defendant company is to be measured by his conduct. In the light of his testimony, we do not think that his conduct was wanton or criminal. From his evidence, it appears that he, knowing that the deceased saw the train, but a short distance away, approaching the crossing at tremendous speed, naturally reasoned that she would not attempt to cross the railroad track immediately in front of it, but would stop before getting near enough to the rails to be struck by the locomotive; and that as soon as he saw that, without re-

gard to her safety, she was persisting in her attempt to outrun the train to the crossing, he adopted the most effective means to stop the locomotive, but unfortunately it was too late to prevent the accident.

    *Judgment affirmed. All the Justices concurring.*