## CENTRAL OF GEORGIA RAILWAY CO. *v.* NORTH.

1. Upon a careful consideration of the charge of the court and the several requests to charge which were refused, we do not think there was any error in refusing to grant a new trial upon the exceptions thereto urged in the motion for new trial.

2. The verdict was supported by the evidence, and no reason appears for interfering with the discretion of the trial court in refusing to grant a new trial. FISH, C. J., dissents.

                 Argued April 23,—Decided August 15, 1907.

Action for damages. Before Judge Reagan. Henry superior court. January 29, 1906.

*Hall & Cleveland* and *J. F. Wall,* for plaintiff in error.

*Arnold & Arnold,* contra.

ATKINSON, J. The main inquiry is upon the general grounds. The homicide of the plaintiff's husband, committed about one o'clock in the afternoon by the servants of the defendant in the operation of its locomotive, cars, and other machinery, was proved by a witness who was walking along Church street going in the direction of the crossing upon which the deceased was killed, and who was about 125 feet from the place of the catastrophe, but did not see the plaintiff's husband until he was struck and knocked about 30 or 40 feet up into the railroad cut, while the train was running at a high rate of speed. The plaintiff then proved her relation to deceased and his physical condition and earning capacity, and rested. This made a prima facie case. It was attempted to overcome the prima facie case and defeat a recovery altogether, by proving that the injury was the result of the negligence of the plaintiff's husband. Civil Code, §2322. The de-

fendant's evidence was focused upon this contention. In order to sustain this defense the burden of proof was upon the defendant to make it affirmatively appear that the injury was the result of the negligence of the plaintiff's husband. The jury found against the defendant; and if it appears that there was any plausible theory, arising either out of a conflict of evidence or an insufficiency of evidence offered in support of the plea, upon which the verdict could have been rendered, it is our duty to decline to interfere with the discretion of the court below in refusing to grant a new trial. The witness Lyons testified, without contradiction, that when the train was "away up the road," in his opinion about a mile and a half away, and when he and the plaintiff's husband were about 150 yards away from the crossing he heard the whistle of the engine and asked plaintiff's husband what train it was, and was informed that it was the "fast train," the plaintiff's husband saying that he had been informed earlier during the day that it was an hour or two late. Lyons testified further, that, as they walked on, he heard a repetition of whistles from the engine and noise of the train, and finally came in full view of the train as he started to leave the awning and was in full view of the train when he stopped in the street half way between the sidewalk and the crossing; that he then called Dr. North's attention to the approaching train, touched him, and said :- "Doc., let us stop here until the train passes." "He paused a little bit and walked on off," without making any answer to Lyons or indicating in any other way that he did or did not hear the warnings or see the train. After reaching the spur-track on the north side of the crossing, Lyons said North jumped over a little mud-hole between the rails and then started in a run, diagonally across the tracks, and kept running until he was struck. After he commenced to run, Lyons commenced to call to him, loud enough, he thought, to be heard, but North paid no attention to him. While Lyons may have heard and seen the train and may have addressed Dr. North in the manner indicated, it does not affirmatively appear that North either saw or heard the train or heard the suggestion of Lyons to stop and let the train pass. The circumstances were such that the jury could have found that he did hear and see, but not such as to demand such finding. It will not be presumed that North was negligent. The presumptions are the other way. His

conduct upon leaving Lyons in the street was consistent with either having seen the train or heard the warning or with not having seen or heard. Whether he did or not was for the jury, and it is sufficient to support the finding of the jury upon that point that one view of the evidence was consistent with the finding. Lyons and North were followed along the street by Donnehue, who was about 50 yards behind them, and, according to the maps introduced in evidence, had about as good opportunity to see and hear the train as Lyons and North had. Yet he testifies that he did not see or hear the train or know it was coming until it ran opposite him. Donnehue says there was a hard rain and wind blowing from the northeast, the direction from which the train was coming, and that North held his umbrella in such position as would have obstructed the view of the train. Donnehue also says that there were certain freight-cars on the intermediate switch-track, which, for a part of the time, would have obstructed the view. All of this was consistent with North's failure to see or hear the train. Lyons says that North approached the spur-track in a walk, and, immediately after jumping the mud-hole between the rails of the spur-track, started in a run in a diagonal direction from the northeast to the southwest corner of the crossing, the point where he was killed. This course would have placed his back partly to the approaching train and would have carried him in a straight line to the post-office, right near the crossing. Lyons does not say that North saw the train when he started to run, or that he looked in the direction of the train. It may be that he was running to the post-office for shelter from the rain and unaware of the rapid approach of the train, or it may be that he was aware of the approach of the train and was running to get over before it reached the crossing. These were questions for the jury. If he was struck upon the crossing, where he had a right to be, without knowledge of immediate danger from the train, the case would not be at all extraordinary, and there would be ample precedent for a recovery. *G. C. & N. Ry. Co.* v. *Mathews,* 116 *Ga.* 424, 42 S. E. 771. Under the peculiar surroundings of this case, the manner in which deceased went upon the crossing, and the speed of the train and its distance from the crossing at the time it is claimed that North left Lyons on the street and started towards the crossing, are all very important matters; yet

the defendant's witnesses are not entirely in harmony with respect
to them. Sullivan, the telegraph operator, who was in his office
150 or 200 yards distant from the crossing, testified substantially
that he saw the two men together leave the awning and move to-
wards the crossing. As the train came in sight they moved up
closer to the crossing and stopped. As the train came still closer
one of the men moved out and stopped again. He had an um-
brella over him. He moved off further from the other man and
looked towards the train, and as the train got very close to him
he threw his umbrella over him and started on the track as fast
as he could go, in a run. Donnehue, a witness for the plaintiff,
who had followed North and Lyons up the street, testified that
he saw North as he went towards the crossing, and that he was
holding his umbrella down to avoid the wind and rain, and that
he was just going in a "common walk." He did not see him
stop or run at all. Lyons, the witness for the defendant, testified
that they walked right out from the awning, and that he (Lyons)
stopped, but that North "paused a little bit" and walked on
without stopping, and that when he jumped the-hole on the spur-
track he commenced to run and kept running. Lyons also testi-
fied: "When Dr. North left me on the final move, he did not stop
until he got hit." Another witness for the defendant, Mr. Wells,
testified that he saw the men from his front window at a distance,
and said: "They crossed the walk and came to the middle of the
street, and then Dr. North made a dash like he was going to run
across ahead of the train." He does not seem to agree with Lyons
that North walked to the spur-track before commencing to run.
Emerson, the engineer of the train, testified that he saw the two
men before they separated. He says that when he first saw them
they were within 40 feet of the track and that he was 70 yards
from the crossing. He says further that they were walking along
leisurely like they were going to walk a reasonable distance, and
stopped within 30 feet of the track. "Mr. Lyons stopped plumb
still, and Dr. North hesitated just a second and stepped out four
or five feet ahead of him, ducked his head down, drew his umbrella
over between him and the engine, and started to run over." Lyons,
though looking at North, did not remember seeing the umbrella
used as Emerson relates, and places the train, at the time North
left him in the street, at the old switch about 600 or 700 yards

from the crossing, which is quite different from the 70 yards as related by the engineer. The engineer seems to differ with Donnehue also as to what was done with the umbrella and the manner in which North approached the crossing. If Donnehue was correct about the presence of the freight-cars on the side-track, it is altogether probable that the engineer did not have as good view of North and Lyons while walking together, or of North after leaving Lyons, as he thought. Upon the whole, the evidence offered by the defendant was not so uncontradicted and convincing as to demand a finding that the plaintiff's husband knew of his danger at the time he went upon the track of the defendant. If the train was six or seven hundred yards off, as Lyons testified, and North went in a run from the spur-track and could not cross the main-line, about 33 feet distant, before being struck by the approaching train, the speed must have been so great as to render it very questionable whether North could have saved himself after discovering, or after opportunity to discover, the existence of the defendant's negligence. While the train was more than 400 yards from the crossing, a recovery would not necessarily be defeated because the injured person did not anticipate that the defendant's servants would disobey the blow-post law. *Comer* v. *Barfield,* 102 *Ga.* 485, 31 S. E. 89. Under the facts of this case, we think it is controlled by the reasoning in *Williams* v. *Southern Ry. Co.,* 126 *Ga.* 710, 55 S. E. 948. In *W. & A. R. Co.* v. *York,* 128 *Ga.* 687, 58 S. E. 183, there was a conflict of evidence as to whether the deceased knew of the near approach of the train, although, had he taken precaution to look, he could have seen the train 250 yards away and before walking on the track. As to whether, after the negligence of the defendant came into existence and was discoverable by the exercise of ordinary care, York, by the exercise of ordinary care, could have avoided the injury to himself, was the controlling question in the case. The jury having found in favor of the plaintiff, and the verdict having met the approval of the presiding judge, this court declines to interfere with the discretion of the trial court in refusing to grant a new trial.

    *Judgment affirmed. All the Justices concur, except*

Fish, C. J., dissenting. The positive and uncontradicted evidence as set out in the record, to my mind, conclusively shows, that plaintiff's husband, miscalculating the time in which he could

safely cross. the railway company's track, ran on the same at a public crossing, immediately in front of a locomotive which he knew was rapidly approaching the crossing, and was struck by the locomotive and killed. His death was, therefore, directly attributable to his own negligence, and a verdict for the defendant was demanded, notwithstanding its negligence in violating the statute (Civil Code, §2222), and a town ordinance regulating the speed of trains where the homicide occurred. See Hopkins' Pers. Inj. §77; *Central R. Co.* v. *Smith,* 78 *Ga.* 694, 3 S. E. 397; *Southern Railway Co.* v. *Blake,* 101 *Ga.* 217, 29 S. E. 288; *Blake* v. *Southern Railway Co.,* 108 *Ga.* 764, 33 S. E. 396; *Hopkins* v. *Southern Railway Co.,* 110 *Ga.* 85, 35 S. E. 307; *Georgia R. Co.* v. *Sawyer,* 112 *Ga.* 346, s. c. 123 *Ga.* 251, 37 S. E. 380, 51 S. E. 321; *Atlanta Railway Co.* v. *Owens,* 119 *Ga.* 833, 47 S. E. 313; *Thomas* v. *Central Ry. Co.,* 121 *Ga.* 38, 48 S. E. 683.