## 4248.   ATLANTIC COAST LINE RAILROAD COMPANY *v.* CANTY. ·

1. The charge of the trial judge was, in the main, a full and correct presentation of the law applicable to the evidence, but upon a crucial point in the case the instructions were so likely to have confused the jury that they must be presumed to have been injurious to the losing party, and a new trial should have been granted.

2. "To tell the jury that if the plaintiff could have avoided the injury he could not recover, and in the same breath to say that if both parties are at fault the plaintiff's damage may be diminished, is calculated to mislead and confuse them on a point about which they should be most carefully and accurately instructed." *Savannah, Florida & Western R. Co.* v. *Hatcher,* 118 *Ga.* 273 (45 S. E. 239). The same may be said as to an instruction, in a case in which the plaintiff is an employee, that "If you find that both the plaintiff and the defendant's employees were equally at fault, there can be no recovery in this case," although the judge immediately followed this incorrect statement with an instruction that "If you find that the defendant was negligent in any of the particulars alleged in the petition, and further find that the plaintiff was wholly free from fault with reference to the case in question, you would be authorized to find in favor of the plaintiff." The erroneous instruction was not specifically corrected by being expressly withdrawn. "The jury must take the whole charge as the law, and it is not for them to select one part to the exclusion of another, nor to decide whether one part cures or qualifies another, without being instructed so to do by the judge." *Savannah, Florida & Western R. Co.* v. *Hatcher,* supra.

3. Though the trial judge, in effect, presents the principle embodied in § 4426 of the Civil Code, by proper instructions plainly applicable to the evidence in the particular case, still, under the ruling of the Supreme Court in *Atlanta, Knoxville & Northern R. Co.* v. *Gardner,* 122 *Ga.* 92 (49 S. E. 818), the abstract rule of this section of the code, to the effect that if the plaintiff, by the exercise of ordinary care, could have avoided the injury, he can not recover, should nevertheless be given in charge to the jury in the language of the code, where the evidence in behalf of the defendant raises this defense.

4. It is negligence for the engineer in charge of a locomotive of a railroad company to start his train upon the signal of one other than a servant

of the company engaged in the operation of the train; and in all cases, when the engineer moves his train, except upon the signal of those servants of the company who by its rules are authorized to give him signals, he does so at his peril, and if any person or property is injured by such movement of the engine or train, the negligence is actionable.

DECIDED FEBRUARY 24, 1913.

Action for damages; from city court of Waycross—Judge McDonald. May 7, 1912.

*Bennet, Twitty & Reese, Wilson, Bennett & Lambdin,* for plaintiff in error.

*Parks & Reed,* contra.

RUSSELL, J.    The action is based on sections 3148-3150 of the General Statutes of the State of Florida. The plaintiff alleges, that on October 7, 1910, while in the employ of the defendant as a locomotive fireman, and in charge of a "dead" engine, which he was under orders to take from Waycross, Georgia, to Tampa, Florida, he received permanent injuries. It was his duty to ride on this locomotive, which was being hauled "dead," and to see that all the bearings were kept properly packed and oiled, and to repack and reoil any bearings which ran hot. There were between 45 and 50 cars in the train, the dead engine being immediately in front of and next to the caboose in the rear of extra freight-train Number 916. Upon the arrival of the train at Dunellon, Florida, the left back driving-box of the dead engine was hot, and it was necessary for the plaintiff to cool, repack, and oil it. The plaintiff notified the rear flagman of the train that it was necessary for him to go under the locomotive to pack the box, and asked the flagman if he would have time to do so. The flagman replied, "Yes, you will have plenty of time,—fifteen or twenty minutes. We have got to pick up and set off some cars, and also get water. When you get through, come out on the right-hand side and give us a signal, so we will know you are out." The plaintiff asked the flagman to look out for him, and went under the locomotive, and, in order to properly pack the box, sat on the ground in front of the fire-box, and was in that position, working on the hot box with a monkey wrench, when suddenly, without any warning to the plaintiff, or any opportunity for him to extricate himself, the train started off, and the ash-pan of the locomotive caught him on the left hip, dragging him over the ground and crossties for eight or ten feet before he was able to lift himself on the running gear or framework

under the locomotive. In consequence of the movement of the train at that time, he was bruised and injured on the hip, spine, and abdomen, and internally, and will never again be able to do hard physical work; and, as a result of his injuries, he has suffered and still suffers mental and physical pain, suffers from insomnia, paralysis of the muscles of the bladder, chronic constipation, loss of sexual power, muscular twitching of the thigh, and cramps in the bottom of the left foot,—all of which are permanent. It is alleged, that the plaintiff was entirely without fault, and that his injury was due wholly to the negligence of the defendant, in that it was the duty of the flagman to notify the conductor or engineer of the plaintiff's dangerous position, and notify them not to move the train until he was safely out; that it was also the duty of the flagman to notify the plaintiff when it was proposed to move the train, and it was the duty of the conductor and the engineer to ascertain, by proper signals, that no one was in a dangerous position in connection with or upon the train, in time to enable him to move from his dangerous position.

The defendant demurred generally and specially to the plaintiff's petition; the court overruled the demurrer, and the defendant filed timely exceptions pendente lite. The answer of the defendant denied each and every paragraph of the petition separately, except the first paragraph, which alleged the defendant's corporate existence, and the tenth paragraph, which set out the provisions of the Florida statutes upon which the plaintiff based his action. The jury returned a verdict in favor of the plaintiff, and the defendant excepts to the judgment overruling its motion for new trial, as well as to the judgment overruling the demurrer.

On the trial the plaintiff's testimony sustained the allegations of his petition and (if credible to the jury) authorized the verdict. It is only in very immaterial matters that the testimony of the plaintiff supports any of the contentions of the defendant; for, even as to the extent and permanency of his injuries, the plaintiff is corroborated and supported by the physician appointed by the court, at the instance of the defendant's counsel and over objection of counsel for the plaintiff, to examine him, and who made. a thorough examination a few days before the trial. In behalf of the defendant the flagman testified, that he informed the engineer, as soon as Canty went under the engine, that Canty was under it,

and that he did this at Canty's request, and that Canty told him (the flagman) that he would come out on the right side and signal the engineer when he was through with his work. The engineer testified that he saw a man near the rear of the train, whom he supposed to be Canty, signal for him to go on, and that upon receiving this signal he gave the usual four long blasts, and then, because the conductor did not signal and was some distance from the train, he gave a further and additional signal of two blasts, something over a minute later. All of this was done before he started his train. He testified, that the first signal, of four blasts, could have been heard for a distance of a mile and a half, and the latter signal for half a mile; also that there was considerable "slack" in the long train of cars, and that a period of time would elapse between the time when the engine began to move and the dead engine was set in motion, and that the noise of the train in picking up slack would of itself have notified the plaintiff of his danger, and that sufficient time would have been allowed him to get out from under the dead engine. The engineer further testified that shortly after the plaintiff was injured, Canty came across the top of the cars to his engine, and said he "liked to have been killed," but, in response to a question of the engineer as to whether he was hurt, stated that he was not injured. There was evidence in behalf of the defendant to the effect that the injuries of the plaintiff, if he was injured at all, were not serious. The plaintiff proved that his earning capacity at the time of the injury was $55 per month, and his probable expectancy something over thirty-two years. He testified that since his injury he had been unable to work, except at intervals, though there was evidence on the part of the defendant that he had worked for several parties; and the testimony of the plaintiff that he had never previously been injured was questioned by the introduction of two vouchers, indorsed by him, which apparently showed that he had received, at different times, over $100 from a relief association of which he was a member.

The amendment to the motion for a new trial contained thirteen grounds, in which error was assigned upon the charge of the court, and upon the refusal to give instructions requested by the defendant, and a new trial was asked also in order to permit the defendant to introduce newly discovered evidence, to the effect that

the plaintiff had worked for the Florida East Coast Railway, as a fireman, for several months subsequent to his alleged injury, and was apparently in perfect health, and had been paid for such services $3 per day.

1, 2. We shall deal with only three of the exceptions presented by this record. The charge of the trial judge was, in the main, a full and correct presentation of the principles of law applicable to the evidence. It is evident that it was his purpose to be perfectly fair to the defendant, because in some portions of the instructions the language employed perhaps conveyed an idea more favorable to the defendant than it was entitled to have impressed upon the jury; but in one respect at least the instructions must be presumed to have been injurious to the defendant and to have deprived it of a substantial right, or at least exposed it to a substantial injury; because the jury may have entirely misapprehended the instructions. The court charged the jury: "If you find that both the plaintiff and the defendant's employees were equally at fault, there can be no recovery in this case. If you find that the defendant was negligent in any of the particulars alleged in the petition, and further find that the plaintiff was wholly free from fault with reference to the case in question, you would be authorized to find in favor of the plaintiff." It must, of course, be conceded that an instruction to the effect that if both the plaintiff and the defendant's employees were equally at fault, the plaintiff would not be entitled to recover, would convey the impression to the jury that if the plaintiff, though somewhat at fault, was less at fault than the defendant's servants, he could recover; whereas, inasmuch as the plaintiff was an employee, he was not entitled to recover at all unless he was entirely free from fault. Counsel for the defendant in error concede that this instruction was erroneous, but insist that, as it was immediately followed by the correct instruction which we have quoted above, it can not be held to be harmful error. We can not concur in this view of the matter. Juries are not lawyers, and, however intelligent they may be as citizens, they are not expected to be able to discriminate between sound and unsound law. Of course, technically, neither "sound law" nor "unsound law" would be a correct expression, but we use these terms advisedly, because in our system of jurisprudence, and so far as concerns the jury, the instructions of the trial judge are the law and the only law. This court has

several times held that the only efficient way to remove the probably injurious effect of erroneous instructions is to explicitly refer to them and unqualifiedly withdraw them, in terms, from the further consideration of the jury. However, the point is controlled by the ruling of the Supreme Court in *Savannah, Florida & Western Ry. Co.* v. *Hatcher,* 118 *Ga.* 273 (45 S. E. 239), in which the rulings in *Americus R. Co.* v. *Luckie,* 87 *Ga.* 6 (13 S. E. 105), and *Macon R. Co.* v. *Moore,* 99 *Ga.* 229 (25 S. E. 460), are cited. In delivering the opinion of the court in the *Hatcher* case, Justice Lamar says: "To tell the jury that if the plaintiff could have avoided the injury he could not recover, and in the same breath to say that if both parties are at fault the plaintiff's damages may be diminished, is calculated to mislead and confuse them on a point about which they should be most carefully and accurately instructed. But the defendant in error insists that this error was cured in subsequent portions of the charge. The attention of the jury was not specially called to the fact that it was intended to correct what had been previously said. The jury must take the whole charge as the law, and it is not for them to select one part to the exclusion of another, nor to decide whether one part cures or qualifies another, without being instructed so to do by the judge." But for the express rulings of the Supreme Court upon this subject, in various cases, there might be some doubt as to whether, when the judge (as in the present case) very frequently has stated to the jury the correct rule, in a manner so favorable to the losing party as to be beyond any criticism on his part, the error might not be deemed to be cured, and it be presumed that the correct rule would be thoroughly understood by twelve citizens of such intelligence as ordinarily compose our juries. This statement, however, is a mere speculation, and the safe rule is to follow the law, especially as it can never be known with precision what fact or circumstance, or what portion of the charge, most affected or most largely conduced to the result reached by the jury; and we think that the trial judge erred in not granting a new trial upon this ground of the motion.

3. In the 12th ground of the amended motion for a new trial, error is assigned because the court failed and omitted to instruct the jury that if the plaintiff, by the exercise of ordinary care, could have avoided the consequences to himself caused by the defendant's negligence, he would not be entitled to recover. It is doubtful

whether the instructions of the court upon this point, as applied to the facts then in evidence before the jury, are not a sufficient compliance with the requirement that the jury be instructed as to this principle of law, of the omission of which the plaintiff in error complains. The defendant's defense on this point must depend upon the testimony to the effect that before the engineer started his train, he gave the usual whistle, and that there was plenty of time, after this whistle was blown, for the plaintiff to have come out from under the dead engine. As applied to the defendant's proof, the court charged the jury that if they believed, "from the evidence, that the engineer in charge of the train gave the usual signal by blowing the whistle of the engine twice, indicating thereby that he had received a signal from the rear of the train to go ahead, and that after such signal was given and heard by the plaintiff, he (the plaintiff) had time to come from under the engine, and that the plaintiff, by the exercise of ordinary care and diligence, could have gotten from under the engine and escaped the injury, but failed to do so, then your verdict should be in favor of the defendant." The defendant contended also that the circumstances in evidence authorized the conclusion that the plaintiff, after having come out from under the engine and given a signal, went back under the engine for something he had left; and upon this subject the court charged as follows: "Further, if you find from the evidence that the plaintiff gave the 'go ahead' signal, and, after doing so, went back under the engine, and as a result thereof was injured, then and in that event the plaintiff could not recover." It is very plain that the issue as to whether the plaintiff, by the exercise of ordinary care and diligence, could have avoided the injury is raised by the evidence; and, under the ruling in *Atlanta, Knoxville & Northern Ry. Co.* v. *Gardner*, 122 *Ga.* 82, 92 (49 S. E. 818), this issue need not be expressly pleaded as a defense.

The case of *Georgia, Florida & Alabama Ry. Co.* v. *Sasser*, 4 *Ga. App.* 276 (61 S. E. 505), is relied upon as authority for the position that this defense is not raised by the general denial of the plaintiff's allegations, but must be pleaded as a substantive defense. The ruling in the *Sasser* case can not be so construed, for it is based on the fact that the evidence did not suggest such a defense as that the plaintiff by using ordinary care might have avoided the injury caused by the defendant's negligence. Judge Powell says:

27

"It is perfectly plain that no such defense is indicated by the evidence; for it is undisputed that instantly with the jerk of the train the defendant fell headlong from the door of the car and was immediately run over. What a man could have done under these circumstances to have avoided the negligence of the engineer in jerking the train (after he became aware that the negligence was existent and operative) is beyond our power to conceive; for the beginning and the end of the whole casualty were included in the same twinkling of an eye." There may be some conflict between the rulings in *Louisville & Nashville Railroad Co.* v. *Thompson,* 113 *Ga.* 983 (2), (39 S. E. 483), the opinion in *East Tennessee, Virginia & Georgia R. Co.* v. *Duggan,* 51 *Ga.* 213 (in which it was held that it was not error to fail to charge that the plaintiff could not recover if he could have avoided the injury), and the rulings in *Louisville & Nashville R. Co.* v. *Gardner,* supra, *Western & Atlantic R. Co.* v. *Burnham,* 123 *Ga.* 31 (50 S. E. 984), *Williams* v. *Southern R. Co.,* 126 *Ga.* 711, *Southern Ry. Co.* v. *Gore,* 128 *Ga.* 627 (58 S. E. 180), *Central R. Co.* v. *North,* 129 *Ga.* 110 (58 S E. 647), and similar cases. But since there must be another trial for the reasons already stated, we will only say that, although it seems to us the instructions expressly applied to the defendant's evidence might be sufficient, it would perhaps be proper and preferable to give in charge to the jury upon another trial the abstract statement contained in section 4426 of the Civil Code (1910).

4. In the thirteenth ground of the amended motion for new trial the complaint is made that the court erred in refusing to submit to the jury the following instructions, requested in writing: "If you find, from the evidence, that the engineer was informed by the flagman that the plaintiff would give a go-ahead signal to said engineer when he, the plaintiff, came out from under the engine, and that some one other than the plaintiff, and not an employee of the defendant, gave a go-ahead signal to the engineer, and the engineer, believing such signal was given by the plaintiff, and acting in good faith on such signal, moved the train forward, and the plaintiff was injured by such movement of said train, the defendant would not be liable to the plaintiff under such circumstances, and in that event the plaintiff would not be entitled to recover." This exception raises the question as to whether it is negligence for an employee of a railroad company, engaged in op-

erating one of its trains, to move a train (which has been stopped) upon the signal of one who is not engaged in the operation of the train. Some phases of the same question were likewise presented in the demurrer which the trial judge overruled.

We think the trial judge properly refused to instruct the jury that if the engineer went forward in good faith, believing that the signal had been given him by the plaintiff, the defendant would not be liable. The plaintiff, though an employee of the defendant, was not its servant in the operation of the train in question. His sole duty was to care for the dead engine. According to the evidence, he went under the dead engine to remedy a hot box, and, according to his testimony, he was amply assured that provision would be made for his safe exit before the train would be set in motion. According to the defendant's theory, the engineer acted upon a signal given him by one whom he supposed to be the plaintiff, after he had been informed by the flagman that the plaintiff was under the engine. The court charged the jury explicitly with regard to this particular defense, so far as it related to any negligence or lack of care of the plaintiff, instructing the jury that if they believed the engineer gave the usual signal by blowing the whistle of the engine twice, indicating thereby that he had received the signal from the rear of the train to go ahead, and that after such signal was given and heard by the plaintiff he had time to have come from under the engine, and that the plaintiff, by the exercise of ordinary care and diligence, could have gotten from under the engine and escaped injury, but failed to do so, then their verdict should be in favor of the defendant. The court further charged the jury that if they found, from the evidence, that the plaintiff gave the go-ahead signal, and, after doing so, went back under the engine and was injured as a result, then he could not recover. The requested instructions, however, go much further than this, and if they had been given to the jury, the diligence of the engineer would have been made to depend upon his good faith in believing that the person who he alleged gave him a signal was the plaintiff; whereas, in our judgment, it is (prima facie at least) evidence of negligence if an engineer moves his train in response to signals from any one other than those who, by the rules of the company, are authorized to signal him directions to move, and certainly it is negligence for a train to be moved in response to signals from one

who is entirely disconnected from the operation of the train—as was the plaintiff in the present case. It may be that in a particular case no harm would result from an engineer's moving his train upon signals given him by a stranger, but such a movement would be none the less negligence, and in case either person or property were injured, the engineer would have set his train in motion at his peril, and the railway company would be liable for the damage due to this negligence. The question of moving a train of cars which is stationary, in response to signals given by one in authority to give them, is somewhat different from that involved where a train is stopped upon signals given perhaps by a mere bystander. In the latter case it might be the duty of the engineer to stop his train in order to avoid a wash-out or a burning bridge, or other danger which might be prevented. When, however, a train is stationary, there can rarely, if ever, be any case of emergency which would require the movement of the train or permit its being set in motion, except upon signals by those authorized to give them. We have been unable to find any decision in which the exact point has been decided, but if the testimony of the plaintiff in the present case is true (and the jury found it credible), this case presents an unanswerable reason for the rule adopted by the trial judge, and with which we concur.

Several rulings, to the effect that it is negligence as to a co-employee—switchman or brakeman—for an engineer to move forward without a signal from him, are cited by Mr. Thompson in his work on Negligence (vol. 4, § 4497) ; and we see no reason why this plaintiff, who, according to uncontradicted testimony, was in the performance of his duty as to the dead engine, with the knowledge of the flagman, would not be protected by the same rule as a switchman or brakeman engaged in giving signals, if (as appears in this case) the engineer knew he was under the engine. And in our opinion, whether the engineer knew the plaintiff was under the engine or not, under the facts of this case we do not think he would have had the right to move his train upon the signal of any one except an employee authorized to give signals. In Thompson on Negligence (vol. 4, § 4496) it is said: "Whether a railroad company will be imputable with negligence for the act of its servants in charge of its engines or trains, in obeying a signal given by an unauthorized person, will obviously be a question which can

not be decided with reference to any rule of law." In the same work (vol. 3, § 2874) the decision in the case of North Chicago Street R. Co. *v.* Cook, 145 Ill., 551 (33 N. E. 958), affirming s. c., 43 Ill. App. 634, is cited as authority for the principle that where a signal for starting a street-railway car, given by an unauthorized person, caused one who was attempting to alight to be thrown down and injured, the company would not be relieved from liability if the conductor, by due diligence, could have prevented the moving of the car and have avoided the injury, by countermanding the signal or otherwise, although he might not have known that any one was attempting to get off the car. This decision would seem to be some authority for the rule that a railway company is liable for the injuries resulting from the movement of a train in response to signals given by a person not authorized to give them. We conclude that the true rule is that where an employee of a railway company puts his train in motion upon the signal of one who is not authorized to give signals for the movement of the train, he is guilty of negligence, imputable to the company in case injury results from the improper movement which is shown to be the proximate cause of the injury.

5. There was no error in overruling the demurrer. Most of the grounds therein are clearly without merit. We need only refer to the twelfth ground of the demurrer, in which the allegation that the plaintiff incurred an expense of $100 for physician's services and medicine was objected to as insufficient. Under the ruling in *Louisville & Nashville Railroad Co.* v. *Barnwell,* 131 *Ga.* 792 (4), (63 S. E. 501), this allegation was subject to special demurrer, but in *Louisville & Nashville Railroad Co.* v. *Bradford,* 135 *Ga.* 522 (69 S. E. 870), in which the *Barnwell* case, supra, was considered, it was held that the overruling of a special demurrer to such an allegation would not require a reversal, when it is apparent that no harm could have resulted to the defendant from the ruling. While the defects pointed out by the special demurrer should have been met by proper amendment, it is apparent, from the record, that the failure so to amend did not harm the defendant in the trial now under review; and for that reason we have dealt with the grounds of the motion for a new trial, rather than with the exceptions pendente lite to the judgment on the demurrer.

*Judgment reversed.*