No. 3685

Second Circuit

FIDELITY UNION CASUALTY CO., INC., v. CARPENTER

(December 31, 1929. Opinion and Decree.)

McHenry, Montgomery, Lamkin and Lester of Monroe, attorneys for plaintiff, appellant.

Stubb and Thompson of Monroe, attorneys for defendant, appellee.

ODOM, J.   Lamar Gordy was employed by the Dixie Roofing Company, and while engaged in performing services for which he was employed, was injured in an automobile collision between a car on which he was riding and one owned by the defendant, Carpenter.   A dispute arose between Gordy and his employer as to whether he was entitled to compensation under the Workmen's Compensation laws, and in a suit which followed he was awarded compensation which, together with all expenses allowed by the court, amounted to $1,033.05.

The plaintiff in the present suit was the insurer of the Dixie Roofing Company, and as such was called upon to pay and did pay the above amount on account of the accidental injury to Gordy.

The present suit is by the insurer to recover said amount from Carpenter, a third person, by whose fault, it is alleged, Gordy was injured. Plaintiff in its petition sets out all the facts and circumstances connected with the case, and especially alleged that the collision between defendant's truck and the automobile on which Gordy was riding was due solely to the fault and negligence of the truck driver.

Defendant filed an exception of no cause and no right of action which was overruled. Reserving his rights under the exception, defendant answered denying any negligence on the part of his driver, and alleged that Gordy was himself guilty of negligence which so contributed to the accident as to bar recovery. Plaintiff's demands were rejected by the district court, and it appealed.

## ON EXCEPTION OF NO CAUSE OF ACTION

The exception of no cause and no right of action was properly overruled. It is not contended that plaintiff's allegations concerning the injury and the causes thereof are not sufficient and ample to support an action for damages. But counsel for defendant say in brief that plaintiff "does not sue as legal subrogee of the Dixie Roofing Company nor as conventional subrogee of Dixie Roofing Company or Lamar Gordy, nor has it brought itself within the provisions of sec. 7, Act 247 of 1920."

Plaintiff alleged that it was the insurer of the Dixie Roofing Company and that as such had paid out the sum sued for on account of the injuries to Gordy. Section 7, Act No. 247 of 1920, p. 468, provides that in case an employee is injured under circumstances creating liability on the part of some person other than the employer to pay damages, the injured employee may claim compensation from his employer, and the payment of such compensation by the employer shall not affect the injured employee's right of action against such third person for damages nor be regarded as establishing the measure of damages for such injury, and that any employer having paid compensation under the act may bring suit against such third person to recover any amount which he has paid as compensation.

But the above act in specific terms gives no right of action to the insurer which has paid the compensation for the employer to recover the amount so paid from the third person causing the injury. But Act No. 85 of 1926, which amends the above-cited act, does in specific terms subrogate the insurer who has paid compensation to all the rights and actions to which the employer is entitled. Section 23 of the latter act (page 124) reads as follows: "The insurer is hereby subrogated to all the rights and actions which the employer is entitled to under this Act."

Being legally subrogated to the rights and actions of the employer, the insurer can bring its suit under the statute as legal subrogee or under article 2315 of the Civil Code. London Guaranty & Accident Insurance Company v. V. S. & P. Railway Company, 153 La. 287, 95 So. 771.

Clearly, therefore, it is unnecessary for the insurer to obtain a conventional subrogation from either the employer or employee, nor is it necessary for the insurer in bringing his suit to specifically state in

its complaint whether it sues as legal subrogee or whether it claims under article 2315 of the Code. All that is necessary is for it to set out facts sufficient to show that it is entitled to recover under the law and this plaintiff has done.

But counsel contend that plaintiff has not brought itself within the terms of section 7, Act No. 247 of 1920, p. 468, with reference to notice to the injured employee of bringing the suit. The present suit was filed on June ·28, 1928. Later, and before answer was filed, counsel for plaintiff wrote the attorneys for Lamar Gordy, the injured employee, that they had filed suit and named the court in which it was filed, and asked to be advised if Gordy desired to intervene as party plaintiff. Whereupon counsel for Gordy wrote the attorneys for plaintiff that their client did not desire to intervene in the suit. This was a sufficient compliance with the statute as to notice.

## ON THE MERITS

Plaintiff's right to recover against Carpenter depends on whether Lamar Gordy, the injured employee, could have recovered against him if he had brought suit for damages.

The Dixie Roofing Company, the employer of Gordy, has its establishment in the city of Monroe. The company had a contract to do some work at Oak Grove, in West Carroll parish, and on the morning of July 19, 1927, Gordy and other employees reported for duty, and were instructed to prepare for a trip to Oak Grove where they would be detained for several days. Gordy and the others, it seems, lived in West Monroe, where they had to go for their clothes to carry on the trip. The four of them, the two Meredith boys, Gordy, and a colored man named Jenkins, used a Dodge coupe belonging to the employer to go to West Monroe. There was not room in the coupe for all four. The Meredith boys rode in the car, Gordy rode on the right-hand running board, and the colored man on the fender, and Jack Meredith did the driving. When they reached West Monroe, they ran into Wood street and proceeded west on the right-hand side until they reached a point some 25 or 30 feet from the intersection of that street with Trenton avenue, where defendant's truck was parked up next to the curb on the right-hand side, at an angle of about 45 degrees, fronting northwest. When the Dodge coupe on which Gordy was riding reached a point in the street opposite from where the truck was parked, defendant's driver backed the truck into the street, the rear end of it coming in contact w i t h Gordy, who, as stated, was standing on the running board, and he was injured. It is plaintiff's contention that defendant's driver suddenly and rapidly backed the truck into the street, in the way of the Dodge, without looking and without giving any signal or warning of his intended move, which, it is contended, was gross negligence. Defendant contends that the truck driver was guilty of no negligence and charges negligence on the part of Gordy.

It is perfectly clear that if Gordy had been inside the car, instead of on the running board, he would not have been injured. The district judge was of the opinion that it is negligence per se for one to ride on the running board of an automobile, and therefore, conceding that t h e truck driver was guilty of negligence; held that Gordy could not recover on account of his own contributory negligence. At the time of the accident, there was no ordinance of the city of West Monroe nor any statute of the state making it unlawful for one to ride on the running board of an automobile, and it has been repeatedly

held in other jurisdictions that it is not negligence per se for one to ride in that manner. Blashfield's Cyclopedia of Automobile Law, vol. 4, p. 134; Hamilton v. Harrison, 126 Kan. 188, 268 P. 119; Anderson v. Detroit Motor Bus Co., 239 Mich. 390, 214 N. W. 172; Rose v. Carter, 45 R. I. 150, 120 At. 581; Gavin v. Cohen, 136 At. 330, 5 N. J. Misc. R. 296; Koss v. A. Geo. Shultz Co., 195 Wis. 243, 218 N. W. 175.

In all of the above cases, it was held that it is not negligence per se for one to ride on the running board of an automobile, but that one may be negligent by assuming a dangerous position thereon, and that the question whether one so riding is negligent depends upon circumstances, and that the question of negligence is one for the jury or the trial court.

It is conceivable that one may take such a position on a running board of a moving automobile as to be reasonably safe from outside traffic, yet if he permits his body to extend over and beyond the outer edges of the running board and the fenders, he exposes himself to the added risk of being struck by other cars. In other words, the position may or may not be dangerous, and the question of negligence in each case must be determined according to the circumstances. The facts in this case are before us, and we think Gordy was riding in a negligent manner. He was standing on the running board holding to the top of the car with his left hand, his body swerving, we think, unnecessarily too far out. He says the upper part of his body was inside the car, but the testimony of other witnesses is to the contrary. A reading of all the testimony convinces us that if Gordy had not been so far out over the edge, he would not have been injured. Counsel say he was not negligent in the position which he took on the outside of the car, but he was negligent in not keeping a proper lookout and in not taking the proper precautions for his own safety. The car on which he was riding was proceeding west on Wood street on the right-hand side. Defendant's truck was parked on that side with its front wheels up against the curb standing at an angle of about 45 degrees, headed northwest, so that in order to move at all, it had to back out into the street. The driver of the truck started his motor and backed very slowly, about three to five miles an hour, a distance of something like five to seven feet, into the street, just as the Dodge on which Gordy was riding reached that point, and the back end of the truck collided with Gordy's body. The truck driver had made two previous attempts to back from the curb, but, discovering other cars approaching, had let the truck go back to the curb. Gordy was on the outside of the Dodge and in a position to see, if he had looked, each of these movements in ample time to warn the driver of the Dodge that the truck was about to enter the street. It was his duty to look and to warn the driver. He had taken a dangerous position on the car which made it necessary for him to take extra precautions to guard against just such a contingency. He was not a passenger for hire on the car, nor was he an invited guest, and was not absolved from all duty, under the circumstances, to take some precautions for his own safety. He and the others were on a joint mission to get their clothes preparatory to making the trip to West Carroll parish. They were using an automobile belonging to their employer, which, so far as the testimony discloses, was not turned over to any one in particular. The four of them took possession of it and used it, and though Jack Meredith was doing the driving, it appears

that any one of the others had as much right to control it as did the driver himself. Gordy and the driver of the Dodge were both guilty of negligence in failing to observe the parked truck ahead of them and its movements. The street to the left was open, and if the Dodge had swerved as much as 6 or 12 inches at most, there would have been no collision. They were proceeding along the street too close to the rear end of the truck and without observing it. "Ordinarily, that cars parked along the curb of a street may at any time turn into it, is a contingency to be anticipated, and it is the duty of every motorist to keep a proper lookout and use care to have their cars under such control as to avoid collision in such an event." Blashfield's Cyclopedia of Automobile Law, vol. 1, p. 564.

The truck driver was guilty of negligence, in that he did not sound his horn before starting the truck, as is required by the city ordinance, but we think his failure to sound his horn did not contribute to the accident, for it is doubtful if the occupants of the Dodge would have heard it, and if they had, that they would have paid any attention to it; this being a public and much frequented street by automobiles. Aside from his failure to sound his horn, the truck driver proceeded with due caution. He looked back before starting and proceeded—not suddenly, but very slowly, and only five or six feet into the street. His negligence was slight and not the contributing cause of the accident.

Our conclusion is, and we hold, that even though the truck driver was guilty of some degree of negligence, Gordy could not have recovered on account of his own contributory negligence.

The judgment appealed from is correct, and is accordingly affirmed.