### 25467. TAYLOR *v.* MORGAN.

DECIDED SEPTEMBER 12, 1936.  REHEARING DENIED OCTOBER 29, 1936.

*Wesley Shropshire, W. B. Mebane,* for plaintiff in error.
*John D. & E. S. Taylor, Wright & Covington,* contra.

GUERRY, J. This was an action by a wife for the homicide of her husband by alleged negligent operation of an automobile. The

only negligence set up by the pleadings and the evidence was the act of the defendant driving her car over the center line of the road and striking the deceased. The evidence discloses that Morgan, the plaintiff's husband, on a Sunday afternoon was in a DeSoto coupé being driven by James Weems. Weems and three other men were on the seat, and Morgan was standing on the running-board of the car on the left side. Weems and the other occupants urged him to ride inside the car, and insisted that he do so, and that they could make room for him; but he refused. He and the other occupants were guests of Weems. The road on which they were riding extended from Trion, Ga., to Chattanooga, Tenn., and was not paved at the time. The occupants of Weems's car, who were witnesses for the plaintiff, testified that the road was quite dusty at the time of the accident, by reason of the fact that a car had just passed them going in the same direction they were traveling, towards Chattanooga. The defendant and the occupants of her car agreed on this fact. The evidence as to the speed of the car operated by Weems was sharply conflicting. He and the occupants fixed it at 30 to 35 miles per hour. Witnesses for the defendant placed it at 50 to 60 miles per hour. The speed of the defendant's car was variously estimated at from 10 to 30 miles per hour. Weems testified: "Mr. Morgan was holding on the side of the car, and he put his head inside to get out of the dust. . . I couldn't see where his body was outside the car. I was trying to look straight ahead, as straight as possible. I think his body would have been out a very little anyway." Another car going towards Chattanooga had just passed. Weems testified: "The biggest dust was when this car passed. . . Just as a car passed, Mr. Morgan kinder ducked his head under the top to get out of the dust. His body was protruding, and bent back away from the car some. His ducking his head in the car might have interfered some with my seeing ahead of me, but not when I could see a car. I could have seen a car, but it did knock some view off. His head was over me in front of me some little bit. I don't remember that he was talking to me; something was said about the dust, and he put his head in at the top. It was an old-model car, and it had a high windshield. I never saw this car, and the first thing I knew about it was the jar. It first struck the man, because my front hub-cap was not touched.

. . The road was plenty dusty. A car . . drove past us . . going in same direction we were, and they made dust, and I couldn't see any car at all, and I felt a jar. The other car had just passed me. They blew for the road, and I pulled over to the right, and he passed on the side Morgan was standing on. That car did not strike Morgan; it had gone up the road. I did not see this other car [defendant's car] at all. I felt a jar; it wasn't a heavy jar, and Morgan was gone then. At the time I felt the jar on my car I was on the right-hand side of the road. . . It was not so much of a jar as a person might think. The jar seemed like it just kinder rolled him between the cars and there was flesh on Miss Taylor's car the next morning at the top. There was a little flesh on the handle of the door where it had pressed hard against something. The other car was a two-door sedan. The rear fender of her car was pretty bad; and the front fender was bent a little, but not bad. The door handle on her left-hand side was throwed back some, bent to the rear. If his body had not been protruding, it is possible that those cars would have passed without injuring anybody." The defendant was driving towards Trion, meeting the Weems car.

Ellenburg, another occupant of the Weems car, testified that Morgan "was asked to get in, . . but he said something about he would just stand outside, that it would be crowded. . . I didn't pay any attention to the car that struck Henry Morgan. I didn't see the car. I was sitting in another man's lap. . . It was fairly dusty at the time. A car passed us. One whipped past us. . . The first car was headed north. . . Both cars passed on the left-hand side. That was the first I knew Morgan was struck, just a bump seemed like. I felt a bump. I told Mr. Morgan to come and get inside and he could sit on Williams's lap. I told him that because I did not like to see anybody riding on the outside of a car. I didn't like the idea of a man holding on to the left side of a car and standing on the running-board, because it was dangerous. He had his head in that car when he was hit. I don't know how far his body was protruding from the car." Wyke, another occupant, testified: "I did not see the car that struck Morgan before it struck him. A man was sitting on my lap, and this kept me from seeing him. The first indication I had that something had happened was that I felt a jar. .. . The

road was very dusty. . . I do not have any way of knowing how far Mr. Morgan's rear and back were protruding beyond the car. I guess it was sticking out to some extent. I do not know whether it was sticking out or not. Morgan's wound was on his left-hand side, extending from the anterior of the spine around in front to the spinal column in the rear, almost severing him half in two. Starting . . just about the hip bone, it extended through to the spine, cutting all the fleshy part on the inside to the hard here. That was a torn wound, not a cut wound." The evidence for the defendant tended to show that the Weems car had just been passed by another car going in the same direction, and was trying to repass it, and that the Weems car was on its left side of the road, running at a high speed. The defendant testified that she saw the Weems car coming on her side of the road, and she pulled to the right and tried to miss it. There was evidence that Morgan was protruding two feet beyond the Weems car, and that the impact of his body with the defendant's car caused the cars to swing together in the rear.

The plaintiff in error contends that the uncontradicted evidence shows, that, although she may have been guilty of negligence in driving her car to the left of the center of the road, the deceased was so grossly negligent as to preclude any recovery; that by the use of ordinary care he could have avoided the results of her negligence, if any; that when the deceased rode on the left-side running-board of the car, under the circumstances developed by the plaintiff's evidence, such conduct in and of itself constituted gross negligence and precluded a recovery. There was a sharp issue as to whether the defendant was over the center line of the road at all, but the jury has determined that. The defendant in error contends that whether such conduct by the deceased as was shown by the evidence was negligent, and whether he could have avoided the consequences of the defendant's negligence, was a question for the jury. Is this such a plain case under the uncontradicted testimony as shows that deceased was guilty of such want of care as to bar a recovery? In *Central Railroad &c. Co.* v. *Smith*, 78 *Ga.* 694 (4) (3 S. E. 397), it was said: "A person, while grossly negligent himself, has no legal right to count on due diligence by others, but is bound to anticipate that others, like he has done, may fail in diligence, and must guard, not only against negligence

on their part which he might discover in time to avoid the consequences, but also against the ordinary danger of there being negligence which he might not discover until too late." In *Smith* v. *Central R. &c. Co.*, 82 *Ga.* 801 (10 S. E. 111), it was said: "It is beyond dispute that the railroad company was negligent. . . Enough and more than enough appears to fix liability upon the company if only its negligence were involved. But the evidence makes the plaintiff's negligence quite as apparent as that of the company; not only so, but it shows in the fullest and clearest light that by the use of ordinary care he could have avoided the consequences to himself of the defendant's negligence; and that being so, . . he is not entitled to recover. . . His failure in this respect does not stop with reducing the amount of his damages, but defeats a recovery altogether." See *W. & A. R.* v. *Bloomingdale,* 74 *Ga.* 604 (*d*), and cit.; *Thomas* v. *Central of Ga. Ry. Co.,* 121 *Ga.* 38 (48 S. E. 683); *Central of Ga. Ry. Co.* v. *North,* 129 *Ga.* 106 (58 S. E. 647); *Thompson* v. *Southern Ry. Co.,* 134 *Ga.* 371 (67 S. E. 939); *Davis* v. *Whitcomb,* 30 *Ga. App.* 497 (8) (118 S. E. 488).

"If there is anything present at the time and place of the injury which would cause an ordinarily prudent person to reasonably apprehend the probability, even if not the possibility, of danger to himself of doing an act he is about to perform, then he must take such steps as an ordinarily prudent person would take to ascertain whether such danger exists, as well as to avoid the consequences of the same after its existence is ascertained." *W. & A. R. Co.* v. *Ferguson,* 113 *Ga.* 708, 713 (39 S. E. 306, 54 L. R. A. 802). In Berry on Automobiles (4th ed.), 580, it is said: "A passenger riding in the streets of a populous community, with one leg protruding from one of the doors of the car in such a way as to make it liable to come into contact with passing objects, is negligent in conduct." Also 513, § 571: "If the passenger voluntarily goes into a patent danger that he could reasonably avoid, he can not recover." In Blashfield's Enc. Auto. Law, 1101, it is said: "One riding on the running-board of a moving automobile is not necessarily negligent; though he may be found negligent if there was no reason for his assuming such a position." In 5-6 Huddy's Enc. Auto. Law, 252, it is said: "It is conceivable that one may take such a position on a running-board of

a moving automobile as to be reasonably safe from outside traffic; yet if he permits his body to extend over and beyond the outer edges of the running-board and the fenders, he exposes himself to the added risk of being struck by other cars. In other words, the position may or may not be dangerous, and the question of negligence in each case must be determined according to the circumstances." Fidelity Union Casualty Co. v. Carpenter, 12 La. App. 321 (125 So. 504). In Smith v. Ozark Water Mills Co., 215 Mo. App. 129 (238 S. W. 573), it was said: "The action of the deceased standing on the running-board of an automobile . . is an act of negligence concerning which reasonable men could not have a difference of opinion. The law is well settled that where a person voluntarily assumes a position of imminent danger when there is at hand and accessible to him a place of comparative safety, and by reason of his having taken that dangerous position he is injured, he can have no recovery against another who is also negligent, because such person's negligence in taking the position is one of the direct and proximate causes of the injury and contributes thereto." See also Schomaker v. Harvey, 291 Pa. 30 (139 Atl. 495, 61 A. L. R. 1241); Guilfoile v. Smith, 97 Conn. 271 (116 Atl. 237); Zavodnick v. Rose, 297 Pa. 86 (146 Atl. 455). In Georgia this principle obtains: "One who knowingly and voluntarily takes a risk of injury to his person and property, the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety and that of his property, can not hold another liable for damages for injuries thus occasioned." Southern Ry. Co. v. Hogan, 131 Ga. 157 (62 S. E. 64). "Causal relation is one of fact; and it is always one for determination by a jury, except when the facts are such that they will support only one reasonable inference. Green's Proximate Cause, 132. There must be no reasonable ground for two opinions." Letton v. Kitchens, 166 Ga. 121, 125 (142 S. E. 658).

The defendant in error says that the question in this case was one of comparative negligence, which was necessarily a matter for the jury. Where both parties are at fault, the plaintiff may recover if the negligence of the defendant exceeds the negligence of the plaintiff, but the damages shall be diminished in proportion to the amount of fault attributable to him; but this rule does not

apply until the jury have determined that the plaintiff could not have avoided the result of the defendant's negligence by the use of ordinary care. See *Elk Cotton Mills* v. *Grant*, 140 *Ga.* 727 (79 S. E. 836, 48 L. R. A. (N. S.) 656). In *Americus, Preston & Lumpkin R. Co.* v. *Luckie*, 87 *Ga.* 6 (13 S. E. 105), it was said: "The law of contributory negligence is applicable only where both parties are at fault, and *when, also* [italics ours], the plaintiff could not by ordinary care have avoided the injury which the defendant's negligence produced. . . It seems to be the clear meaning of our law that the plaintiff can never recover in an action for personal injuries, no matter what the negligence of the defendant may be, short of actual wantonness, when the proof shows he could by ordinary care, after the negligence of the defendant began, or was existing, have avoided the consequences to himself of that negligence." At common law contributory negligence barred a recovery by the plaintiff. The law of Georgia as embraced in the Code, §§ 94-703, 105-603, is rather that of comparative negligence. *Central of Ga. Ry. Co.* v. *Larsen,* 19 *Ga. App.* 413 (91 S. E. 517), and cit. The rule in § 105-603 "applies only where the defendant's negligence became apparent to the person injured, or where by the exercise of ordinary care he could have become aware of it, and he thereafter failed to exercise ordinary and reasonable diligence to avoid the consequences of the defendant's negligence." *Larsen* case, supra. The case of *Atlantic Ice & Coal Co.* v. *Folds,* 47 *Ga. App.* 832 (171 S. E. 581), is distinguishable on the facts. A boy not quite fifteen years old was riding on the running-board of a car and holding on with both hands. He was knocked off the car by a collision between the car and the truck, and then was run over by the truck. The deceased in the present case was a man twenty-nine years old. In the *Folds* case it became a jury question as to the degree of care required of a boy of his age. It does not appear that the injury to the boy was necessarily brought about by the truck striking him because of his position on the running-board, but that he was thrown by a collision between the truck and the car and was then injured. The principle cited from Huddy was applicable in that case.

We think it clear in this case, under the undisputed evidence, that the plaintiff's husband was knowingly riding on the left-side

running-board of the automobile, which side was next to all vehicles being met on the road. A car had just passed, and the road was dusty. None of the occupants of the car in which the deceased was riding saw the car they were meeting until they felt a bump, or jar. The front part of the cars did not come into contact. The left rear hub-caps contacted. The deceased was struck by the door-handle on the defendant's car, just above his hip-bone, and his body was cut or torn almost in two. The evidence for the plaintiff, as well as for the defendant, is that at the time of the injury he was riding with his head and possibly his shoulders inside the car, and the middle and rear of his body protruding beyond the car or running-board. From the plaintiff's testimony and the physical circumstances as disclosed by the condition of the cars and the injuries on the body of the deceased, it appears that if he had been riding in the car, or on the running-board in such a manner as not to have protruded beyond the car, no injury to him would have occurred. If he had been in the exercise of that degree of care which every prudent person is bound to take, even though the defendant were driving her car to the left of the center of the road, no injury would have occurred. We think the facts of this case as developed by the evidence make it plain and indisputable that by the use of ordinary care the deceased could have avoided the result of the negligence of the defendant in driving on the left of the center of the road. In view of what has been said, it is unnecessary to discuss the remaining assignments of error. We think the court erred in overruling the motion for new trial.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*